**WAL–MART STORES, INC.,**
**Appellant–Defendant,**

v.

**Nancy BATHE and David Hedge,**
**Appellee–Plaintiffs.**

No. 49A02–9812–CV–1001.

Court of Appeals of Indiana.

Sept. 3, 1999.

Thomas L. Davis, Julia Blackwell Gelinas, Robert W. Wright, Dionne Carroll McCoy, Locke Reynolds Boyd & Weisell, Indianapolis, Indiana, Attorneys for Appellant.

John C. Green, Hume Smith Geddes Green & Simmons, L.L.P., Indianapolis, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge

Nancy Bathe and David Hedge filed tort actions against Wal–Mart Stores, Inc., seeking compensation for damages allegedly stemming from an incident in which Bathe and Hedge were detained and searched in a Wal–Mart store on suspicion of shoplifting. Wal–Mart filed a motion for summary judg-

ment, which the trial court denied. Thereafter, the trial court granted Wal–Mart's motion to certify the ruling for interlocutory appeal. Pursuant to Ind. Appellate Rule 4(B)(6)(b), we accepted jurisdiction of this interlocutory appeal to review the trial court's ruling and to address the following novel question of law:

> Does Indiana's Shoplifting Detention Act (the Act), Ind.Code Ann. § 35–33–6–2 (West 1998) *et seq.*, preclude a customer's claims of fraud, defamation, and negligence where the conduct of the merchant's employees are authorized by the Act?

We reverse.

The facts most favorable to the nonmoving party are that on August 3, 1996, Bathe went into a Wal–Mart store in Indianapolis, accompanied by her two children and a friend, David Hedge. When the group was finished shopping, their purchases were placed in two shopping bags and they exited the store. As they were leaving, a security buzzer sounded. Two men, who did not identify themselves, approached the group, took their shopping bags, and asked them to step back into the store. The two men were Michael Bennett, a Wal–Mart manager, and Lendell Montgomery, a Wal–Mart customer service manager. Montgomery and Bennett escorted Bathe back to the checkout counter where she had paid for her items, and began unloading her bags. The bags were passed through a scanner and did not trigger the alarm. After checking the receipts against the items in the bag, Bennett stated, "they must have it on them." *Record* at 55. Bathe responded that she owned two businesses and was not a thief. She offered to let Bennett search her purse, but he refused. Bathe then took her purse through the scanner, and the alarm sounded. Bathe returned to the checkout counter and emptied her purse. Bennett found a Dristan box, scanned it, and the alarm sounded. The box was empty and had a white plastic tag on it. Bathe explained that she had purchased the Dristan earlier from a different store. Bennett placed Bathe's purchases back in the shopping bags and told her that she was free to leave.

Montgomery, Bennett, and Hedge estimated that the entire episode—from the time Bathe and Hedge were stopped until told that they were free to leave—took no more than fifteen minutes. Bathe estimated that it took about forty-five minutes. Montgomery and Bennett testified that they did not know Hedge or Bathe, and did not recall having seen them before the incident. Bennett had not previously identified himself, but Bathe assumed he was a Wal–Mart employee because he wore a white shirt, black pants, and a tag. She expressed her intention to sue Wal–Mart and asked for Bennett's identity, which he provided.

Hedge and Bathe filed separate lawsuits against Wal–Mart, each alleging defamation, malice, fraud, gross negligence and negligence, and seeking both compensatory and punitive damages. Their causes were joined for purposes of this interlocutory appeal.

The issue we are called upon to resolve involves the scope of immunity granted to store owners under the Act for actions taken against suspected or possible shoplifters. IC § 35–33–6–2 states:

(a) An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft may:

(1) detain the person and request the person to identify himself;

(2) verify the identification;

(3) determine whether the person has in his possession unpurchased merchandise taken from the store;

(4) inform the appropriate law enforcement officers; and

(5) inform the parents or others interested in the person's welfare, that the person has been detained.

(b) The detention must:

(1) be reasonable and last only for a reasonable time; and

(2) not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever first occurs.

Prior decisions of this court have clarified that a merchant is not liable for claims of false imprisonment, false arrest, and malicious prosecution where the conduct of the employer is authorized by the Act. *See Duvall v. Kroger Co.*, 549 N.E.2d 403 (Ind.Ct. App.1990) (pursuant to the Act, detention is lawful if probable cause exists to detain a person, and lawful detention cannot constitute false imprisonment). Bathe and Hedge impliedly acknowledge this decision by pointing out that they have not sued upon those theories, but instead upon the theories of negligence, fraud, and slander *per se*, or defamation.

■ Because we are called upon to address a pure question of law, *i.e.*, the scope of a merchant's immunity under the Act, we review the matter de novo. *Aide v. Chrysler Financial Corp.*, 699 N.E.2d 1177 (Ind.Ct. App.1998), *trans. denied.* When construing the meaning of a statute, our primary goal is to ascertain and effect the intent of the legislature in enacting the statute. *Sullivan v. Day*, 681 N.E.2d 713 (Ind.1997). We accomplish this by giving effect to the ordinary and plain meaning of the language used in the statute. *Clifft v. Indiana Dep't of State Revenue*, 660 N.E.2d 310 (Ind.1995).

In *Haltom v. Bruner and Meis, Inc.*, 680 N.E.2d 6 (Ind.Ct.App.1997), this court examined the history, purpose, and operation of the Act. To summarize, the Act was a response by our legislature to an epidemic of shoplifting. It was designed "to provide some measure of immunity from liability for a merchant whose agent detains someone suspected of theft." *Id.* at 8. A merchant's authority to detain under the Act is triggered in specific instances. Once triggered, the merchant's authority extends to the exercise of certain enumerated powers, as set out in subsections (a)(1) through (5) of IC § 35–33–6–2. Unlike the situation in *Haltom*, Bathe and Hedge do not challenge the existence of probable cause sufficient to justify Wal–Mart's decision to detain them. Accordingly, they do not challenge (1) the fact of the detention, (2) Wal–Mart's verification of their identities, or (3) the fact that Wal–Mart sought to determine whether they had in their possession unpurchased merchandise taken from the store. Seemingly, then,

Bathe and Hedge concede that Wal–Mart had authority under subsection (a) to so act.

■ Bathe's and Hedge's complaints, however, are not brought under subsection (a), but instead under subsection (b), which provides that the detention must be reasonable and last only for a reasonable time. May a merchant be liable in tort for exercising authority granted under subsection (a), but doing so in an unreasonable manner or for an unreasonable amount of time? Although no Indiana court has addressed the question, we agree with the reasoning and conclusions in two cases from other states that have decided the issue.

In *Jury v. Giant of Maryland, Inc.*, 254 Va. 235, 491 S.E.2d 718 (1997), employees of a Giant Food store in Virginia suspected that Carlotta Jury had shoplifted. As she was preparing to pay for items at the checkout, two men grabbed her arm and ordered her to accompany them. When she refused, one of the men struck her in the chest, causing her to fall to the floor. The men yanked Jury roughly to her feet, twisted her arm behind her back, and marched her into a storage room at the back of the store. Once there, one of the men kicked Jury in the back of the leg, causing her to fall face first into a pile of dirt. The men pushed her face into the dirt, then pulled her to her feet by grabbing her hair. They accused her of being a thief, called her obscene names, and stomped on her foot. They refused to let her go to the restroom, or to check on the two young children she had left locked in her car in the store's parking lot. They told Jury that she could not leave until she signed a confession, which she refused to do.

Jury filed suit against Giant, alleging assault and battery, negligence, and intentional infliction of emotional distress. Giant filed a motion for summary judgment, claiming immunity based upon Code § 18.2–105, which provided, in pertinent part:

> A merchant, agent or employee of the merchant, who causes the arrest or detention of any person pursuant to the provisions of § 18.2–95 or § 18.2–96 or § 18.2–103, shall not be held civilly liable for unlawful detention, if such detention does not exceed one hour, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested or detained, whether such arrest or detention takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, provided that, in causing the arrest or detention of such person, the merchant, agent or employee of the merchant, had at the time of such arrest or detention probable cause to believe that the person had shoplifted or committed willful concealment of goods or merchandise. The activation of an electronic article surveillance device as a result of a person exiting the premises or an area within the premises of a merchant where an electronic article surveillance device is located shall constitute probable cause for the detention of such person by such merchant, his agent or employee, provided such person is detained only in a reasonable manner and only for such times as is necessary for an inquiry into the circumstances surrounding the activation of the device, and provided that clear and visible notice is posted at each exit and location within the premises where such a device is located indicating the presence of an antishoplifting or inventory control device. . . .

Va.Code Ann. § 18.2–105 (Michie 1996).

In *Jury*, the merchant claimed absolute immunity under Code § 18.2–105. The court acknowledged that the scope of immunity conferred by the statute was "very broad." *Jury v. Giant of Maryland, Inc.*, 491 S.E.2d at 720 (quoting *F.B.C. Stores, Inc. v. Duncan*, 214 Va. 246, 198 S.E.2d 595, 598 (1973)). Nevertheless, the court noted that it is a fundamental principle of statutory construction that the court presumes that the legislature does not intend that application of the statute should work irrational consequences. The court observed that the Virginia statute was an attempt by that state's legislature to strike a balance between one person's property rights and another person's personal rights. The court concluded that "the statute 'enlarged' a merchant's rights to protect his property, but did not enlarge them 'infinitely,' and diminished, but did not extin-

guish, 'the litigable rights of the public.'" *Jury v. Giant of Maryland, Inc.*, 491 S.E.2d at 720 (quoting *F.B.C. Stores, Inc. v. Duncan*, 198 S.E.2d at 599). The court held that the statute provided merchants with immunity from civil liability based upon a wide range of torts, but did not extend to torts committed in a willful, wanton, or otherwise unreasonable or excessive manner.

In *Boone v. Wal–Mart Stores, Inc.*, 680 So.2d 844 (Miss.1996), an employee thought she saw a customer put a razor in his pocket while standing in the checkout line. After the customer exited the store, the employee informed a supervisor of what she had seen. The supervisor instructed her to go outside and get the license plate number of the suspected shoplifter. When she went outside, the employee saw a police car. Assuming that the car had been summoned in response to the suspected shoplifting incident she had witnessed, she approached the police car, pointed out the customer's car, and said, "That's the car there driving off." *Boone v. Wal–Mart Stores, Inc.*, 680 So.2d at 845. The police officer activated his lights and stopped the customer's car. The customer was eventually returned to the Wal–Mart store, where he was confronted by Wal–Mart employees who, according to the customer, accused him of having taken an item. A subsequent search of the customer and his companion failed to produce any stolen merchandise. The confrontation and search took place at the service desk inside the store, and was witnessed by approximately one hundred people.

The customer sued Wal–Mart for defamation, and received an unfavorable verdict following a jury trial. He appealed, arguing that the court erroneously instructed the jury regarding the scope of a merchant's liability under Mississippi's shoplifting statute, which states:

If any person shall commit or attempt to commit the offense of shoplifting, or if any person shall wilfully conceal upon his person or otherwise any unpurchased goods, wares or merchandise held or owned by any store or mercantile establishment, the merchant or any employee thereof or any peace or police officer, acting in good faith and upon probable cause based upon reasonable grounds therefor, may question such person in a reasonable manner for the purpose of ascertaining whether or not such person is guilty of shoplifting as defined herein. Such questioning of a person by a merchant, merchant's employee or peace or police officer shall not render such merchant, merchant's employee or peace or police officer civilly liable for slander, false arrest, false imprisonment, malicious prosecution, unlawful detention or otherwise in any case where such merchant, merchant's employee or peace or police officer acts in good faith and upon reasonable grounds to believe that the person questioned is committing or attempting to commit the crime of shoplifting.

Miss.Code Ann. § 97–23–95 (1994). The Supreme Court of Mississippi held that immunity under the statute extended only to acts that constituted "reasonable" exercises of the authority granted by M.C.A. § 97–23–95: "Whether privilege is available as a defense may depend on the manner in which the communication is made. The protection of a qualified privilege may be lost by the manner of its exercise, although belief in the truth of the charge exists." *Boone v. Wal–Mart Stores, Inc.*, 680 So.2d at 848 (quoting *Southwest Drug Stores of Mississippi, Inc. v. Garner*, 195 So.2d 837, 841 (Miss.1967)).

Although not precisely the same, the Virginia and Mississippi shoplifting statutes are sufficiently similar to Indiana's Shoplifting Detention Act, in both purpose and subject matter, so as to be useful in construing the Indiana provision. Like Indiana's statute, the Virginia and Mississippi shoplifting statutes immunize merchants from intentional torts such as slander, false arrest, false imprisonment, and malicious prosecution. All three authorize such detention as is necessary to ascertain whether a suspected shoplifter is attempting to take items that were not paid for. Moreover, and most significantly, all three require that the detention and search be "reasonable." The Mississippi and Virginia courts concluded that a merchant might be liable in negligence under their respective statutes for detentions and searches that are not reasonable. We agree

with the reasoning and conclusions reached by those courts, as summarized above, and hold that under Indiana's Shoplifting Detention Act, a merchant may be liable in negligence for unreasonable detentions.

We turn now to the ruling on the summary judgment motion in the instant case. The standard of review applicable to rulings on summary judgment motions is well settled.

> Summary judgment is appropriate only when no genuine controversy exists. In reviewing the propriety of summary judgment, this court applies the same standard as the trial court. The party seeking summary judgment has the initial burden of demonstrating that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. Once the movant presents pleadings, depositions, answers to interrogatories, admissions or affidavits showing he or she is entitled to summary judgment, the non-movant cannot rest on his pleadings, but must set forth specific facts establishing a genuine issue of material fact. A failure to establish a disputed issue of material fact will result in the grant of summary judgment provided the movant is entitled to judgment as a matter of law.

*Duneland School Corp. v. Bailey,* 701 N.E.2d 878, 880 (Ind.Ct.App.1998) (citations omitted). We recognize that summary judgment is generally inappropriate for negligence cases, *Indiana Limestone Co. v. Staggs,* 672 N.E.2d 1377 (Ind.Ct.App.1996), including cases where the specific issue is reasonableness. *Stump v. Indiana Equip. Co., Inc.,* 601 N.E.2d 398 (Ind.Ct.App.1993), *trans. denied.* However, reasonableness may be determined as a matter of law if the evidence is such that there can be no reasonable difference of opinion. *Id.* We believe that this is especially so where, as here, the facts are not juxtaposed against the standard of a reasonable man, but instead are to be interpreted against a specific statutory grant of immunity. *Cf. South Tippecanoe School Bldg. Corp. v. Shambaugh & Son, Inc.,* 182 Ind.App. 350, 395 N.E.2d 320 (1979) (principle applied when construing the particular facts against an insurance policy provision). We believe

that there are certain situations in which a merchant's actions clearly fall within the immunity granted by the statute. In such situations, when the facts are undisputed, the reasonableness of a merchant's actions may be a question of law for the court to decide. *Cf. Koenig v. Bedell,* 601 N.E.2d 453 (Ind.Ct. App.1992) (principle applied in determining whether an insured gave "reasonable" notice within the meaning of an insurance policy). We will consider the purpose of the Act and the entities and interests it was intended to protect in determining whether the facts of a particular case are such as to present a question of reasonableness for a jury to decide.

In the instant case, an alarm was triggered when Bathe and Hedge attempted to leave the store. Wal–Mart employees escorted Bathe and Hedge back to the checkout counter where they had made their purchases and ascertained in a short amount of time that nothing in the shopping bags was triggering the alarm. Having eliminated that possibility, the employees arrived at the only logical conclusion, *i.e.,* that whatever was triggering the alarm must be located on Bathe's person. When apprised of this conclusion, Bathe offered to let the employees search her purse. The employees declined the offer, and asked Bathe to pass through the door with the purse. When she did so, the alarm sounded. At this point, Bathe emptied her purse and upon discovering the empty Dristan box, Bennett stated, "here it is, right here." *Record* at 79. When Bathe indicated that she had purchased that item elsewhere, Bennett deactivated the plastic tag that was triggering the alarm, returned Bathe's bags, and informed her that she was free to go.

Bathe claims that she was detained for forty-five minutes. Everyone else, including Bathe's fifteen-year-old daughter and Hedge, agreed that the entire incident took no more than fifteen minutes, and perhaps as little as five minutes. Bathe's memory concerning the duration of the detention is certainly understandable. Time passes slowly when one is the object of unwanted attention. Nevertheless, in view of the events that everyone agreed took place within that time frame, and considering the fact that everyone

except Bathe agreed that the detention lasted a maximum of fifteen minutes, the credible evidence demonstrates that the episode lasted fifteen minutes, at most. Consequently, we conclude as a matter of law that Wal–Mart did not detain Bathe and Hedge for an unreasonable amount of time.

With regard to the manner of the search, Bathe claims that there were nine actions undertaken by Wal–Mart that a jury must evaluate for reasonableness, including: (1) using an alarm system that could be triggered by merchandise purchased elsewhere; (2) Bennett and Montgomery failing to identify themselves as Wal–Mart employees; (3) conducting the search in front of Bathe's children; (4) searching Bathe's bags at the checkout counter in the presence of other customers; (5) allowing Bathe to empty the contents of her purse onto the counter; (6) taking the Dristan box from among the contents of Bathe's purse; (7) taking Bathe's pager and running it through the alarm system; (8) Bennett stating, "they must have it on them," *Record* at 55; and (9) Bennett holding the Dristan box up and stating, "here it is, right here." *Record* at 63.

The theft alarm systems employed by retail establishments are meant to address the very same problem for which the Act was enacted, *i.e.,* to curb shoplifting. As a general deterrent, such alarm systems undoubtedly serve a useful purpose and are more or less effective. This is not to say, however, that they are flawless. False alarms are not unheard of. We refuse to create by judicial fiat a rule making merchants liable for the occasional false alarm, such as might be triggered by security tags from other stores.

We agree that it is advisable for a merchant's employees to identify themselves as such when initiating a detention upon suspicion of shoplifting. However, we cannot conceive of how the failure to do so in the instant case could have damaged Bathe or Hedge, nor do Bathe or Hedge even contend that it did. Our review of the record reveals that during the entire episode, Bathe and Hedge appeared to assume that Bennett and Montgomery were employees of Wal–Mart. In fact, Bathe admitted that she assumed Bennett was a Wal–Mart employee because

of the clothes he was wearing and a tag on his shirt. There might be instances when the failure of the store employee to identify himself as such might arguably be a proximate cause of injury. For instance, if a store employee's failure to identify himself causes the detainee to resist, thereby escalating the situation, a detainee may be able to prove a cognizable injury. This is not such a case, however.

■ We turn now to the manner in which the search was conducted. Bathe and Hedge contend that Wal–Mart was negligent in conducting the search at the checkout counter in front of Bathe's children, as well as other customers. In striking a balance between the merchant's property rights and a customer's personal rights, our legislature has decided to permit the merchant to stop customers when probable cause exists that gives rise to a reasonable suspicion. When this occurs, "customers must recognize the right of business persons to temporarily interrupt their lives to ascertain whether the customer is attempting to escape from an honorable economic transaction." *Boone v. Wal–Mart Stores, Inc.,* 680 So.2d at 848. We understand that innocent customers who trigger alarms might suffer embarrassment merely by virtue of the fact of being detained while the merchant satisfies itself that the customer is not attempting to shoplift. The reaction is understandable, but our legislature has decided that the situation must be tolerated in order to protect a merchant's property rights. Put another way, the Act authorizes a merchant to take steps that might inevitably result in some embarrassment to innocent customers.

■ The appellees were not stopped because they had been observed taking items. Rather, they were stopped because an alarm sounded when they passed through a security device, indicating that they were carrying something with a security tag that had not been deactivated. We deem it reasonable as a matter of law for merchants in such instances to (1) ask the customer to step back to the checkout stand where the purchase was made in order to inventory items contained in a shopping bag, (2) check those items against the register receipt, and (3)

check the items themselves for devices that might trigger the alarm. Alarm devices located at the store entrance and at the checkout counters, as well as the checkout clerk who helped Bathe and Hedge, were useful resources to be utilized in determining whether the alarm signaled an actual theft. Indeed, a meaningful search many not have been possible without the aid of the security devices located at the front of the store. We note also that it is possible Wal–Mart would have created the potential for greater embarrassment had it whisked Bathe away from her children and into a security office for questioning. Moreover, anyone who witnessed the entire episode learned at its conclusion that Bathe and Hedge were innocent of wrongdoing. The decision to conduct an inquiry at the checkout stand in the presence of Bathe's children and other customers was reasonable as a matter of law.

■ The appellees contend that Wal–Mart conducted an unreasonable search in (1) allowing Bathe to empty her purse at the checkout counter, (2) picking up the Dristan box from among the contents of Bathe's purse and scanning it, and (3) running Bathe's pager through the scanner.

We summarily reject the argument that it was unreasonable for Wal–Mart to permit Bathe to empty the contents of her purse at the checkout counter. Bathe acted voluntarily in that regard and the responsibility for that action rests entirely with her. With regard to Wal–Mart's decision to run a pager and the Dristan box through a scanner, such actions are clearly authorized by § 35–33–6–2(a)(3) because the Wal–Mart employees so acted in order to determine whether Bathe or Hedge had in their possession unpurchased merchandise taken from the store. Wal–Mart's actions in this regard were reasonable as a matter of law.

■ Finally, the appellees contend that Wal–Mart is liable for two allegedly unreasonable statements made by Wal–Mart employees during the search. First, after determining that none of the items in Bathe's shopping bag triggered the alarm, Bennett stated, "they must have it on them." *Record* at 144. Second, when he picked up the Dristan box from among the contents of Bathe's

purse, Bennett stated, "here it is, right here." *Record* at 63.

After eliminating the shopping bag as a possible location of the item triggering the alarm, Bennett correctly deduced that the item in question must be located on Bathe's person. He communicated his analysis of the situation and the resulting conclusion to Montgomery as the search continued. We conclude as a matter of law that this factually accurate remark was not unreasonable in the context in which it was made. The same can be said of the remark, "here it is, right here." *Id.* Upon seeing the box, Bennett correctly surmised that he had found the item that triggered the alarm. In this context, the remark was merely informational, and certainly not unreasonable.

We do not doubt that the detention and search embarrassed Bathe and Hedge. Considering the strong negative feelings that would be aroused in a person detained under those circumstances, a merchant would be hard pressed to exercise its authority under the Act in such a way as to avoid the possibility of leaving the detainee feeling embarrassed and wronged. Nevertheless, the fact remains that our legislature has determined that a merchant's property rights must be protected, even at the risk of offending people who are ultimately innocent of any wrongdoing. The boundaries within which merchants must conduct themselves during such detainments and searches are those of reasonableness. As we have previously stated, the Act does not immunize a merchant from liability for negligence based upon allegations that it conducted an unreasonable search. Although reasonableness is generally a question for the factfinder to decide, we are of the opinion that if a jury were permitted to decide that Wal–Mart's actions in the instant case were unreasonable, then the immunity provided by the Act would be illusory indeed.

In summary, a merchant is not immune from suit against claims of negligence based upon allegations of unreasonable detainments. In the instant case, however, the actions of Wal–Mart in detaining Bathe and Hedge and ascertaining whether they carried

unpurchased items were, as a matter of law, reasonable exercises of the authority granted by the Act. Accordingly, the trial court should have granted Wal–Mart's motion for summary judgment on the negligence count, and the failure to do so was error.

Finally, we address the viability of Bathe's claims against Wal–Mart alleging defamation and fraud. We acknowledge the argument made by Bathe and Hedge that Wal–Mart waived any issue concerning defamation by not raising that particular question prior to the filing of its appellate brief. Even assuming *arguendo* that Hedge and Bathe are correct in that regard, we nevertheless will address the question for the purpose of judicial economy. *See Angleton v. Estate of Angleton*, 671 N.E.2d 921 (Ind.Ct.App.1996), *trans. denied.*

 The allegations of fraud and defamation contained in the appellees' complaints are based upon the same acts that served as bases for the negligence claims. Assuming that the theories of defamation and fraud are otherwise available in an action against merchants purporting to exercise authority granted by the Act, they will not succeed in cases where it is determined that the merchant's actions were reasonable. Put another way, a merchant who exercises authority consistent with that granted by the Act is immune from claims of defamation and fraud, as well as negligence.

We have already held that Wal–Mart is not liable in negligence because the detention and search were reasonable as a matter of law. Therefore, Wal–Mart is entitled to summary judgment on the appellees' allegations of defamation and fraud. This cause is remanded with instructions to grant Wal–Mart's motion for summary judgment.

Judgment reversed.

BAILEY, J., and STATON, J., concur.