Melissa Dittoe DIETZ, Appellant–
Plaintiff,

v.

FINLAY FINE JEWELRY CORP., L.S. Ayres & Company, Inc., The May Department Stores d/b/a L.S. Ayres, Famous–Barr Co., and Dennis Bake, Appellees–Defendants.

No. 71A03–0010–CV–372.

Court of Appeals of Indiana.

Aug. 22, 2001.

Edward A. Chapleau, South Bend, IN, Attorney for Appellant.

James H. Milstone, Kopka, Landau & Pinkus, South Bend, IN, Attorney for Appellee Finlay Fine Jewelry Corp.

John R. Obenchain, J. Thomas Vetne, Jones Obenchain, LLP, South Bend, IN, Attorneys for Appellees L.S. Ayres & Company, Inc., The May Department Stores d/b/a L.S. Ayres, Famous–Barr Co., and Dennis Bake.

## OPINION

BROOK, Judge.

### Case Summary

Appellant-plaintiff Melissa Dittoe Dietz ("Dietz") appeals from the dismissal of her suit against appellee-defendant Finlay Fine Jewelry Corp. ("Finlay") and, alternatively, the grant of summary judgment in favor of Finlay on Dietz's claims for invasion of privacy, false imprisonment, defamation, intentional infliction of emotional distress, and intentional interference with an employment relationship. Dietz also appeals the separate grant of summary judgment in favor of appellees-defendants L.S. Ayres & Company, Inc., The May Department Stores d/b/a L.S. Ayres, Famous–Barr Co., and Dennis Bake (collectively, "Ayres") on the same claims.

We affirm in part, reverse in part, and remand.

### Issues

Dietz raises the following issues for our review:

I. whether the trial court erred when it dismissed her complaint against Finlay for lack of subject matter jurisdiction;

II. whether the trial court erred when it granted summary judgment in favor of Finlay and Ayres on her claims for:

A. invasion of privacy, where the security manager allegedly disclosed information about Dietz's credit history to one or two other employees;

B. false imprisonment, where Dietz was detained and questioned about an unauthorized discount and allegedly was further questioned about missing jewelry;

C. defamation, where the security manager allegedly accused Dietz of having a drug or alcohol problem and suggested that she stole jewelry to support such;

D. intentional infliction of emotional distress, where the security manager questioned Dietz in a gruff and intimidating manner;

E. intentional interference with the employment relationship, where Dietz was discharged after admitting she had given an unauthorized discount to a customer.

### Facts and Procedural History

The facts favorable to Dietz follow. Finlay leases a commercial space in the L.S. Ayres retail store, from which it sells fine jewelry. Finlay did not employ its own security personnel but, instead, utilized the security services provided by L.S. Ayres. In July of 1998, Finlay hired Dietz as a sales clerk at a wage of $6.00 per hour plus commissions.

In September of 1998, a customer wanted to purchase a Finlay diamond ring on sale for $1,439.20. The customer intended to charge the purchase to her "top" account, but Dietz did not know how to perform that task. After she mistakenly placed the purchase on the customer's "flex" account, Dietz voided the transaction and then repeatedly sought assistance to complete the sale. Both Dietz and the customer grew frustrated. Eventually, an L.S. Ayres manager assisted Dietz. Without authorization, Dietz gave the then "irate" customer an extra ten percent discount.

L.S. Ayres security manager Dennis Bake ("Bake") learned about the transaction from another employee. He confirmed the unauthorized sales price and spoke with his supervisor. Thereafter, Bake asked Dietz to accompany him to an interview room, and Dietz complied. Two other employees were present. Kathleen Camp ("Camp"), a sales manager, witnessed the interview because, if a female is interviewed, "they call one of the female managers in on it[.]" A male security employee, Curt Seufert ("Seufert"), allegedly examined video monitors during the first five or ten minutes of the meeting, a task unrelated to the Dietz interview. Dietz sat in a chair, and Bake sat in front of her.

The ensuing interview lasted fifty-seven minutes. Dietz first signed a document acknowledging that she understood she was free to leave at any time. Bake then explained his job title and responsibilities. He told Dietz that he had access to her L.S. Ayres charge account and could determine if she had been late in making her payments. Dietz was "on guard." She described Bake's demeanor as "very gruff, very intimidating." Bake also spoke of mistakes in Dietz's account book and informed Dietz that there were six pieces of

jewelry missing. Dietz claims that Bake also accused her of having a drug or alcohol problem and "suggested" that she pawned the jewelry to pay bills or to support her problem. Bake allegedly stated, "[I]t all leads back to you. What are you going to do about it?" Several times, Bake told Dietz not to interrupt him. At one point, he also demanded that Dietz stay in the room. Dietz stated she did not feel free to leave, and she believed if she had attempted to do so, Bake would have verbally intimidated her into staying.

Bake asked Dietz if she had ever given a discount to a friend or relative, or to "anybody." Dietz disclosed the incident involving the discounted ring but insisted she had done nothing wrong. Eventually, Dietz signed a promissory note for $143.92, the amount of the discount. At Bake's direction, she also drafted and signed a document admitting she had given the unauthorized discount.[1] Finlay dismissed Dietz for violating company policy.

Thereafter, Dietz filed a seven-count complaint against Finlay and Ayres, alleging invasion of privacy, false imprisonment, defamation, intentional infliction of emotional distress, intentional interference with an employment relationship, negligent hiring and supervision, and breach of contract. Ayres moved for summary judgment. Separately, Finlay filed a consolidated motion to dismiss and motion for summary judgment. Without elaboration, the trial court granted Ayres' motion on August 22, 2000. In an order dated October 3, 2000, the trial court granted Finlay's motion to dismiss, finding that the Worker's Compensation Board had exclusive subject matter jurisdiction, and in the alternative, granted Finlay's motion for summary judgment on all counts. This appeal followed.[2]

## Discussion and Decision

### I. Motion to Dismiss

Dietz first challenges the trial court's grant of Finlay's motion to dismiss for lack of subject matter jurisdiction based upon the exclusivity provision of the Indiana Worker's Compensation Act. A motion to dismiss for lack of subject matter jurisdiction presents a threshold question regarding a court's power to act. *Samm v. Great Dane Trailers*, 715 N.E.2d 420, 424 (Ind.Ct.App.1999), *trans. denied* (2000). When reviewing such a motion, the relevant question is whether the type of claim presented by the plaintiff falls within the general scope of the authority conferred upon the court by constitution or statute. *Id.*

"[R]ecovery for personal injury or death by accident arising out of employment and in the course of employment can be sought exclusively under the Worker's Compensation Act," and "such actions are cognizable only by the Worker's Compensation Board." *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1285 (Ind. 1994). "The legislature intended the board's jurisdiction in such cases to be original and exclusive, and resort may not be had to the courts until the administrative process has been completely exhausted." *Id.* Claims not meeting any jurisdictional prerequisite do not fall within the Act and may be pursued in court. *Id.*

The precise question raised in this case is whether Dietz's injuries qualify as "personal injur[ies]" under the Act. The supreme court's decision in *Perry* is instructive. There, Perry was an African—

---

1. Dietz concedes that she provided the discount "[a]s a customer service gesture," but the customer may have had a coupon for a ten-percent discount.

2. On appeal, Dietz does not challenge the grant of summary judgment on her claims for negligent hiring and supervision and breach of contract.

American automobile salesman allegedly subjected to "continuing harassment," including racial slurs, vulgarity, and battery. *Id.* at 1284–85. After he was discharged, Perry sued his former employer for assault, slander, and assault and battery. *Id.* at 1285. The employer argued that the complaint was barred by the exclusivity provision of the Worker's Compensation Act. *Id.* at 1286. In examining the nature of "personal injury" comprehended by the Act, the court explained:

> [Personal injury] includes both physical injury and the somewhat different notions of "disability" and "impairment." "Impairment" is a term of art for purposes of workers compensation that denotes an injured employee's loss of physical functions. "Disability" refers to an injured employee's inability to work. The extent of a disability is determined by a worker's physical and mental fitness for various employment opportunities.

*Id.* at 1288 (citations omitted). Perry alleged that he had suffered embarrassment, humiliation, stress, and paranoia and that his character and reputation had been damaged, but he had not sustained any physical injury or loss of physical function. *Id.* Similarly, but for his discharge, Perry was able and willing to continue to perform his duties at the dealership. *Id.* at 1288–89. Ultimately, the court held that Perry's claims were not barred by the exclusive remedy clause of the Act because the injuries at the heart of his complaint

were not physical and there was no impairment or disability as contemplated by the Act. *Id.* at 1289.

■ Here, as in *Perry*, Dietz does not claim to have suffered physical injury or loss of physical function. Rather, she alleges loss of sleep, anxiety, tension, depression, humiliation, extreme emotional distress, and injury to her reputation, injuries that are not physical in nature. Dietz also seeks economic damages for loss of wages, benefits, and detriment in seeking other employment, damages unrelated to any impairment or disability. Because the injuries at the heart of Dietz's complaint do not involve personal injury as defined by the Act, her claims may be pursued in court. The trial court erred in dismissing her claims against Finlay for lack of subject matter jurisdiction.[3]

## II. Motions for Summary Judgment

■ Dietz also contends that the trial court erred when it entered summary judgment in favor of Finlay and Ayres on her claims for invasion of privacy, false imprisonment, defamation, intentional infliction of emotional distress, and intentional interference with her employment relationship. When reviewing the grant of summary judgment, our standard of review is the same as that applied by the trial court: summary judgment is appropriate only when the designated evidentiary matter demonstrates that there is no genuine issue regarding any material fact and that the moving party is entitled to a

---

3. Our conclusion comports with the results reached by this court in other post-*Perry* cases. *See, e.g., Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 519–21 (Ind.Ct. App.2001) (holding that exclusivity provision did not apply where complaint stated claims for invasion of privacy, libel, intentional infliction of emotional distress, negligent supervision, and loss of consortium), *trans. denied; Landis v. Landis,* 664 N.E.2d 754, 755–56 (Ind.Ct.App.1996) (holding that trial court

had jurisdiction over complaint averring assault and battery, intentional interference with a business relationship, and intentional infliction of emotional distress where employee had disclaimed recovery for any injury covered by the Act), *trans. denied; Terrell v. Rowsey,* 647 N.E.2d 662, 664–65 (Ind.Ct.App. 1995) (holding that action in which plaintiff allegedly suffered embarrassment, defamation, and loss of quiet enjoyment of his property was not barred by the Act), *trans. denied.*

judgment as a matter of law. *Dible v. City of Lafayette,* 713 N.E.2d 269, 272 (Ind.1999). The movant has the burden of establishing the propriety of summary judgment. *Town of Syracuse v. Abbs,* 694 N.E.2d 284, 286 (Ind.Ct.App.1998).

For defendants to prevail on their motions for summary judgment, they must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that they have a factually unchallenged affirmative defense barring the plaintiff's claim. *Dible,* 713 N.E.2d at 272. "When there are material disputed facts, or if undisputed facts give rise to conflicting reasonable inferences that affect the outcome, they must be resolved in favor of the non-movant." *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.,* 686 N.E.2d 102, 104 (Ind.1997). We give careful scrutiny to assure that the non-prevailing party is not improperly prevented from having her day in court. *Id.*

### A. Invasion of Privacy

We first consider Dietz's invasion of privacy claim, based upon her allegation that Bake disclosed her credit problems to Camp and Seufert.[4] The general tort, invasion of privacy, includes four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of likeness, (3) public disclosure of private facts, and (4) false-light publicity. *Doe v. Methodist Hosp.,* 690 N.E.2d 681, 684 (Ind.1997) (plurality opinion) (citing RESTATEMENT (SECOND) OF TORTS § 652A (1977)). The public disclosure of private facts, described by the Second Restatement, occurs when a person gives " 'publicity' " to a matter that concerns the " 'private life' " of another, a matter that would be " 'highly offensive' " to a reasonable person and that is not of legitimate public concern. *Id.* at 692 (quoting RESTATEMENT (SECOND) OF TORTS § 652D).

Citing *Doe,* the parties dispute whether Indiana recognizes an action for public disclosure of private facts. Under the specific facts and complaint presented in *Doe,* the plurality was not persuaded "to endorse the sub-tort of disclosure." *Id.* at 693. The plurality did not, however, foreclose all future claims for public disclosure of private facts. *See, e.g., Ledbetter v. Ross,* 725 N.E.2d 120 (Ind.Ct.App.2000) (discussing claim). As explained in *Doe,* under the Restatement view adopted by most courts, a communication to a single person or to a small group of persons is not actionable because the publicity element requires communication to the public at large or to so many persons that the matter is " 'substantially certain to become one of public knowledge.' " 690 N.E.2d at 692 (quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. a). In this case, Bake allegedly discussed Dietz's credit difficulties in the presence of sales manager Camp. The record does not disclose what co-employee Seufert overheard, but release of the information to even two co-workers does not satisfy the publicity requirement articulated in the Restatement.

In contrast, "a few courts, including Indiana's neighbors," have adopted a looser definition of "publicity," finding a disclosure actionable if made to a " 'particular public' " with a special relationship to the plaintiff. *Id.* (quoting *Beaumont v. Brown,* 401 Mich. 80, 257 N.W.2d 522, 531 (1977), *overruled in part by Bradley v. Saranac Community Sch. Bd. of Educ.,* 455 Mich. 285, 565 N.W.2d 650 (1997)). Here, Camp was present as a female witness, and Seufert was a member of the

---

4. The designated evidence shows that Bake told Dietz that he could "pull up credit reports" and determine if there were any late charges. Bake also allegedly suggested that Dietz pawned jewelry to pay bills. For purposes of this opinion only, we assume that Bake's statements constitute disclosure of Dietz's "credit problems."

security staff, watching video monitors. There is no evidence that Dietz had a special relationship with either so that a disclosure to them, under the circumstances, would render them a "particular public." *See id.* at 693 (finding *Beaumont* inapplicable because there was no special relationship between plaintiff and fellow letter carrier). Because Finlay and Ayres negated the publicity element of Dietz's claim, they were entitled to summary judgment for invasion of privacy.

### B. False Imprisonment

■ Dietz also maintains that genuine issues of material fact preclude summary judgment on her false imprisonment claim.[5] False imprisonment involves "an unlawful restraint upon one's freedom of locomotion or the deprivation of liberty of another without [her] consent." *Crase v. Highland Village Value Plus Pharmacy*, 176 Ind.App. 47, 50, 374 N.E.2d 58, 60–61 (1978). "False imprisonment may be committed by words alone, or by acts alone, or by both and by merely operating on the will of the individual, or by personal violence, or both." 35 C.J.S. *False Imprisonment* § 14, at 444 (1999).

■ Finlay and Ayres assert immunity under the Shoplifting Detention Act, Indiana Code Section 35–33–6–2, which provides:

> (a) An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft may:
>
> (1) detain the person and request the person to identify [herself];

(2) verify the identification;

(3) determine whether the person has in [her] possession unpurchased merchandise taken from the store;

(4) inform the appropriate law enforcement officers; and

(5) inform the parents or others interested in the person's welfare, that the person has been detained.

(b) The detention must:

(1) be reasonable and last only for a reasonable time; and

(2) not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever first occurs.

The Shoplifting Detention Act "permits the merchant's agent to effect a warrantless arrest or detention where the facts and circumstances known to the agent at the time of the arrest would warrant a person of reasonable caution to believe the arrestee has committed or is committing a theft on or about the store." *Haltom v. Bruner and Meis, Inc.*, 680 N.E.2d 6, 9 (Ind.Ct.App.1997). When probable cause to detain is present, detention is lawful. *Duvall v. Kroger Co.*, 549 N.E.2d 403, 407 (Ind.Ct.App.1990); *see* IND.CODE § 35–33–6–4 ("A civil or criminal action against an owner or agent of a store ... may not be based on a detention which was lawful under section 2 of this chapter.").

Here, Dietz maintains that the Shoplifting Detention Act does not apply because there was no probable cause to believe she committed theft, which occurs when one "knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use." IND.CODE § 35–43–4–2. As used in the

---

5. Dietz also alleges a factual dispute regarding Bake's authorization to detain her. The designated evidence shows that Bake sought authorization from his supervisor and that both Finlay and L.S. Ayres authorized Bake to get restitution from Dietz. Nevertheless, Dietz theorizes that Bake detained her to impress his girlfriend, who did not like her. Dietz's cited evidence lends no support to her theory.

statute, to "exert control over property" means, *inter alia,* to sell property or to transfer or extend a right to property. *Id.* § 35–43–4–1(a). Control over another person's property is "unauthorized" if it is exerted "without the other person's consent" or "in a manner or to an extent other than that to which the other person has consented." *Id.* § 35–43–4–1(b).

At the time of the detention, Bake had discovered and verified the unauthorized transaction. Thus, he reasonably believed that Dietz had intentionally sold the diamond ring at a price less than that approved by Finlay with the intent to deprive Finlay of part of its value. That constitutes probable cause for purposes of the Shoplifting Detention Act. That alone, however, does not mean the test of reasonableness in manner and time has been met in this case. *See* Ind.Code § 35–33–6–2(b)(1) (providing that the detention must be reasonable and must last only for a reasonable time). An originally reasonable detention may be denied statutory protection if the actions taken in connection with the detention become unreasonable. 32 Am.Jur.2d *False Imprisonment* § 80 (1995).

In her deposition testimony, Dietz stated that Bake also questioned her about six pieces of missing jewelry. Assuming that questioning occurred,[6] we cannot say as a matter of law that Bake had probable cause to suspect Dietz was involved in those thefts. Without probable cause, there is no immunity under the Shoplifting Detention Act.

Nor can it be determined as a matter of law that Dietz voluntarily remained in the room during the entire interview. Although Dietz had signed a document acknowledging that she was free to leave at any time, she also stated that she did not feel free to leave during the meeting. Allegedly, at one point Bake told Dietz to stay in the room. In addition, Dietz felt that, if she had attempted to leave, Bake would have used "verbal intimidation" to keep her there. Because the designated evidence does not conclusively establish the reasonableness of the detention, we cannot determine whether the Shoplifting Detention Act renders Finlay and Ayres immune for false imprisonment. Summary judgment on that claim was improvidently granted.

## C. Defamation

Next, Dietz asserts there are genuine issues of material fact precluding summary judgment on her defamation claim.[7] Finlay and Ayres counter that they are immune from defamation claims under the Shoplifting Detention Act and, further, that the communications at issue were subject to the common law doctrine of qualified privilege. We begin by recognizing that defamation consists of the following elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Davidson v. Perron,* 716 N.E.2d 29, 37 (Ind.Ct.App. 1999), *trans. denied* (2000). A communication is defamatory *per se* if it imputes criminal conduct. *Levee v. Beeching,* 729 N.E.2d 215, 220 (Ind.Ct.App.2000). Gen-

---

6. Bake denies having made such statements, but at this stage of the proceedings we must construe the evidence in favor of Dietz. *See Warner Trucking,* 686 N.E.2d at 104 (material disputed facts are resolved in favor of nonmovant).

7. Without citing designated evidence, Finlay seeks to avoid liability altogether by arguing

that "Dietz did not demonstrate that Finlay could be liable for Mr. Bake's actions under the doctrine of respondeat superior." Finlay misses the point. As the movant, Finlay was required to show the absence of a genuine issue of material fact on the issue. *See Dible,* 713 N.E.2d at 272. Finlay did not meet its burden in that regard.

erally, the determination of whether a communication is defamatory is a question of law for the court. *Davidson,* 716 N.E.2d at 37.

Here, as stated above, Bake was justified in questioning Dietz about the unauthorized discount and, thus, Finlay and Ayres are immunized from claims of defamation based on reasonable communications related to that investigation. *See Wal–Mart Stores, Inc. v. Bathe,* 715 N.E.2d 954, 963 (Ind.Ct.App.1999), *trans. denied* (2000). Indeed, statements that Dietz gave an unauthorized discount to a customer are true and, thus, not actionable. *See Branham v. Celadon Trucking Servs., Inc.,* 744 N.E.2d 514, 522 (Ind.Ct. App.2001) (stating that true statements never give rise to liability for defamation), *trans. denied.* As before, however, Bake's alleged statements about Dietz's drug or alcohol problem and his suggestion that she stole jewelry to support such are not immunized under the Shoplifting Detention Act.

Finlay and Ayres also seek immunity under a qualified privilege of common interest, which protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258, 262 (Ind.1994). The privilege does not apply, however, to statements made without belief or grounds for belief in their truth. *Bals v. Verduzco,* 600 N.E.2d 1353, 1356 (Ind.1992); *May v. Frauhiger,* 716 N.E.2d 591, 595 (Ind.Ct. App.1999). As stated above, factual issues remain concerning whether Bake had grounds for belief in the truth of his alleged statements regarding jewelry thefts to support a drug or alcohol problem.

There is a second bar to application of the privilege on the designated evidence. As our supreme court recognized, a statement may lose its privileged character if there is excessive publication of the defamatory statement. *Bals,* 600 N.E.2d at 1356. "The privilege is lost if the defamation goes beyond the group interest, or if publication is made to persons who have no reason to receive the information." *K Mart Corp. v. Brzezinski,* 540 N.E.2d 1276, 1282 (Ind.Ct.App.1989), *trans. denied* (1990). In this case, sales manager Camp was present during the entire interview as a female witness. Thus, Camp was required to be present. *See Kolczynski v. Maxton Motors, Inc.,* 538 N.E.2d 275, 276 (Ind.Ct.App.1989) (holding there was no actionable defamation where employer utilized only employees necessary to conduct the investigation), *trans. denied.* The designated evidence, however, does not indicate what Seufert heard and whether he had a corresponding duty to be present. *See K Mart Corp.,* 540 N.E.2d at 1282 (holding that question of fact existed regarding whether publications to one employee was protected by qualified privilege). Bake himself stated that Seufert "didn't need to be there[.]" Thus, we cannot say as a matter of law that Seufert had a reason to receive the information.

"Whether a statement is protected by qualified privilege is a question of law unless the facts are in dispute." *Id.* In the present case, there are factual disputes regarding whether Bake had grounds to believe his alleged statements concerning additional thefts to support a drug or alcohol problem. There is also a question about whether there was excessive publication of any such statements. Because the designated evidence construed favorably to Dietz permits different inferences and conclusions regarding the privi-

lege, the question of abuse of privilege should be submitted to the jury. *See May,* 716 N.E.2d at 595. Accordingly, the trial court erred when it granted summary judgment on the defamation claim.

### D. Intentional Infliction of Emotional Distress

 We next consider whether the designated material supports a claim for intentional infliction of emotional distress. The tort, first recognized by our supreme court in *Cullison v. Medley,* 570 N.E.2d 27 (Ind.1991), is committed when a person engages in extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress to another. *Branham,* 744 N.E.2d at 523. Rigorous requirements must be met to prove the tort. *Id.* The conduct at issue must exceed all bounds usually tolerated by a decent society and must cause mental distress of a very serious kind. *Id.* In the appropriate case, the issue may be decided as a matter of law. *Id.*

 In this case, Dietz asserts that Bake accused her of substance abuse, shoplifting, and dishonesty in a gruff and intimidating manner. Even if the interview proceeded as asserted, Dietz's intentional infliction of emotional distress claim fails as a matter of law. Bake's actions occurred in the context of a detainment for the purpose of determining the extent of Dietz's unauthorized conduct. While, at the most, Bake may have unreasonably detained and defamed Dietz, his actions in this case do not constitute outrageous behavior. Taken in context, Bake's conduct did not exceed all bounds usually tolerated by a decent society. The trial court properly entered summary judgment in favor of Finlay and Ayres on Dietz's intentional infliction of emotional distress claim.

### E. Intentional Interference with an Employment Relationship

 Dietz's last claim concerns intentional interference with her contractual relationship.[8] Our supreme court has stated, "The parties in an employment at will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship." *Bochnowski v. Peoples Fed. Sav. & Loan Ass'n,* 571 N.E.2d 282, 284 (Ind.1991). Thus, "[a]n employee with an at will employment contract must be able to expect that [her] continued employment depends on the will of [her] employer and not upon the whim of a third party interferer." *Id.* at 285. Nevertheless, the plaintiff bringing an action for intentional interference with an at will employment contract must show that the defendant interferer acted intentionally and without a legitimate business purpose. *Id.* In determining whether an intentional interference is justified, the Restatement suggests that the following factors be considered:

(a) the nature of the defendant's conduct;

(b) the defendant's motive;

(c) the interests of the plaintiff with which the defendant's conduct interferes;

(d) the interests sought to be advanced by the defendant;

(e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;

(f) the proximity or remoteness of the defendant's conduct to the interference; and

(g) the relations between the parties.

*Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1235 (Ind.1994) (citing RESTATEMENT (SECOND) OF TORTS § 767 (1977)).

---

8. Curiously, Dietz raises the claim against all defendants, including her own employer.

In this case, the designated evidence shows that Bake interviewed Dietz, in part, to determine whether she gave an unauthorized discount to a customer. Although Dietz has a legitimate interest in her job, Finlay and L.S. Ayres have strong interests in preventing employees from giving discounts to customers at will. Bake was authorized to act, and Dietz admitted that she had given the discount, a violation of company policy. Because the designated evidence demonstrates a legitimate business purpose for the interference, the trial court properly entered summary judgment on Dietz's claim for intentional interference with her employment relationship.

### Conclusion

The motion to dismiss for lack of subject matter jurisdiction was entered in error because, given the nature of Dietz's alleged injuries, the trial court had jurisdiction over Dietz's suit against Finlay. The trial court properly entered summary judgment in favor of Finlay and Ayres on Dietz's claims for invasion of privacy, intentional infliction of emotional distress, and intentional interference with an employment relationship. However, there remains a question of fact regarding whether the detention was reasonable; thus, Finlay and Ayres are not entitled to summary judgment on the false imprisonment claim. In addition, there are factual disputes regarding whether Bake's statements were privileged for defamation purposes so that summary judgment on the defamation cause of action is inappropriate.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and VAIDIK, J., concur.