

FILED

Oct 25 2018, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory W. Black
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Thomas L. Davis
Matthew R. King
Darren A. Craig
Frost Brown Todd, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Denny Alan Neff, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Wal-Mart Stores East, LP, <br> *Appellee-Defendant.* | October 25, 2018 <br><br> Court of Appeals Case No. <br> 18A-PL-421 <br><br> Appeal from the Putnam Circuit Court <br><br> The Honorable Matthew C. Kincaid, Special Judge <br><br> Trial Court Cause No. <br> 67C01-1506-PL-187 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Denny Alan Neff (Neff), appeals the trial court's summary judgment in favor of Appellee-Defendant, Wal-Mart Stores East, L.P. (Wal-Mart), on Neff's allegations sounding in negligence and tort and derived from his arrest and termination by Wal-Mart.

We affirm.

# ISSUES

Neff presents us with six issues on appeal, which we restate as follows:

(1) Whether the trial court properly entered summary judgment for Wal-Mart on Neff's claim for breach of employment contract and wrongful termination when Neff was an employee at-will;

(2) Whether the trial court properly entered summary judgment for Wal-Mart on Neff's claim for false arrest, criminal confinement, tortious confinement, trespass against person, and false imprisonment when Wal-Mart detained Neff pursuant to the Shoplifting Detention Act;

(3) Whether the trial court properly entered summary judgment for Wal-Mart on Neff's claim for negligent infliction of emotional distress;

(4) Whether the trial court properly entered summary judgment for Wal-Mart on Neff's claim for intentional infliction of emotional distress;

(5) Whether the trial court properly entered summary judgment for Wal-Mart on Neff's claim for defamation; and

(6) Whether the trial court properly entered summary judgment for Wal-Mart on Neff's claim for invasion of privacy.

# FACTS AND PROCEDURAL HISTORY

[4] In September 2014, Neff worked as a service writer in the tire and lube express department at Wal-Mart, located in Greencastle, Indiana. When he entered his employment on July 25, 2013, Neff had received Wal-Mart's written employee handbook setting forth the company's policies. On September 24, 2014, Neff and service manager Anthony Brackett (Brackett) removed tires, described by Neff as "outdated and deleted," from the service area. (Appellant's App. Vol. III, p. 145). Service manager Travis Wilbur (Wilbur) then authorized the sale of those tires for ten dollars or one dollar each, depending on the tire. The actual retail price of the tires was at least five to ten times the discounted price. Wilbur claimed that assistant manager, Dana Lyday, had approved the discount. Neff, Brackett, and another Wal-Mart associate purchased the tires at the discounted price and they rang up the transactions for each other at the cash register.

[5] The following day, September 25, 2014, Wal-Mart's asset protection manager, Randall Spannuth (Spannuth), received his daily report reflecting any discounts greater than fifty dollars and noticed the steep discounts involved in the tire sale. Investigating the sale more closely, Spannuth pulled the receipts in the system, the electronic journal, and store videos. Based on this information, he identified the cashiers and talked to their managers about the "extremely discounted" price for the tires. (Appellant's App. Vol. III, p. 38). Spannuth

concluded "there was an issue" because the "tires were being sold for under what the retail price was," and the "associates were discounting for each other." (Appellant's App. Vol. III, pp. 38-39). Spannuth determined that Neff had not followed Wal-Mart's written Associate Purchase Policy which limits the merchandise its associates may purchase to merchandise "which is available to all Customers/Members." (Appellant's App. Vol. III, p. 177). Furthermore, the policy provides that "[o]nly salaried members of management can authorize the point-of-sale markdown," and "[d]efective or damaged merchandise must have been marked down and offered to the public at a lower price for at least one day before any associate, or salaried member of management, including the Facility Manager, can purchase it." (Appellant's App. Vol. III, pp. 177-78). Pursuant to this policy, neither Neff nor Wilbur had authority to set the discounted price without prior managerial approval. When questioning the store managers, both managers informed Spannuth that they had not authorized the discounts or transactions. Because Spannuth determined that it was not reasonable for Neff to assume that he had properly purchased the tires, Spannuth concluded that Neff had intended to commit a theft of the tires.

[6]  At the close of the investigation and after consulting with his supervisor, Spannuth arranged for interviews with Wilbur, Brackett, and Neff. Neff's interview occurred in an office in the back of the store. Following the interviews, Wal-Mart decided to report the three employees to the police for theft. After having been provided with a copy of Wal-Mart's asset protection records, the video surveillance disk, and internal investigation, the police

officers spoke with Neff, arrested him, and escorted him to jail.[1]  Wal-Mart terminated Neff's employment.

[7]     On June 5, 2015, Neff filed a Complaint against Wal-Mart, the City of Greencastle, and the Greencastle police department, in which he asserted thirteen causes of action.  On June 26, 2017, the City of Greencastle and the Greencastle Police Department filed a motion for summary judgment which was granted by the trial court on December 7, 2017.  Neff did not appeal.  Subsequently, on June 20, 2018, the trial court dismissed the City of Greencastle and the Greencastle police department.

[8]     On September 14, 2017, Wal-Mart filed its motion for summary judgment, memorandum of law, and designation of evidence.  On September 19, 2017, Neff filed his reply to Wal-Mart's motion for summary judgment, together with a designation of evidence.  On December 7, 2017, after a hearing, the trial court granted Wal-Mart's motion and entered summary judgment in its favor.  On January 2, 2018, Neff filed a motion to correct error, which was deemed denied on February 16, 2018.

[9]     Neff now appeals.  Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I.  *Standard of Review*

---

[1] The record reflects that the State declined to bring criminal charges against Neff.

[10]     In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Grp. v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

## II. *Wrongful Termination*

[11]     Neff first contends that the trial court erred when it granted summary judgment in favor of Wal-Mart on his claim of wrongful termination. Neff maintains that

"[he], Wal-Mart, [h]ad a [d]eal. Though at Will, Wal-Mart [r]etained a [d]uty of [f]airness." (Appellant's Br. p. 32).

[12] Indiana follows the doctrine of employment at-will, under which employment may be terminated by either party at-will, with or without reason. *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653 (Ind. 2009). There is a strong presumption that employment in Indiana is at-will. *Harris v. Brewer*, 49 N.E.3d 632, 639 (Ind. Ct. App. 2015), *trans. denied*. Here, the designated evidence clearly establishes that Neff himself acknowledged that his employment was for an indefinite duration and was at-will. Accordingly, Wal-Mart's termination of Neff did not breach any employment contract.

[13] However, as pointed out by Neff, "[i]f an employment contract for an ascertainable term of employment does not exist, an exception to the employment-at-will doctrine may apply." *Id.* at 640. Our supreme court has recognized three exceptions to the employment-at-will doctrine: (1) if an employee establishes that adequate independent consideration supports the employment contract; (2) if a clear statutory expression of a right or duty is contravened; and (3) if the doctrine of promissory estoppel applies. *Id*. Relying on the promissory estoppel doctrine, Neff must plead "the doctrine with particularity, demonstrating that the employer made a promise to the employee, the employee relied on the promise to his detriment, and the promise otherwise fits within the Restatement test for promissory estoppel." *Id*. at 644. Besides a cursory mention that he is invoking the promissory estoppel exception, Neff fails to carry his burden of proof. *See* Ind. Appellate Rule 46(A)(8)(a).

Therefore, the trial court properly granted summary judgment to Wal-Mart on Neff's claim.

### III. *Shoplifting Detention Act*

Next, Neff brings a host of allegations arising from his detention by Wal-Mart, to which Wal-Mart defends by relying on the probable cause provision of the Shoplifting Detention Act. Claiming that Wal-Mart had no probable cause to detain him on a suspicion of theft, Neff contends that the trial court erred by issuing summary judgment to Wal-Mart on his claims of false arrest, criminal confinement, tortious confinement, trespass against person, and false imprisonment.

Wal-Mart invoked immunity under the Shoplifting Detention Act, Indiana Code section 35-33-6-2, against Neff's allegations, which provides, in pertinent part, that:

> (a) An owner or agent of a store who has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft
>
> (1) may:
>
> (A) Detain the person and request the person to identify himself;
>
> (B) Verify the identification;

(C) Determine whether the person has in his possession unpurchased merchandise taken from the store;

(D) Inform the appropriate law enforcement officers; and

(E) Inform the parents or others interested in the person's welfare, that the person has been detained.

\* \* \* \*

(c) The detention must:

(1) Be reasonable and last only for a reasonable time; and

(2) Not extend beyond the arrival of a law enforcement officer or two (2) hours, whichever occurs first.

The Shoplifting Detention Act "permits the merchant's agent to effect a warrantless arrest or detention where the facts and circumstances known to the agent at the time of the arrest would warrant a person of reasonable caution to believe the arrestee has committed or is committing a theft on or about the store." *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind. Ct. App. 2001). When probable cause to detain is present, detention is lawful. *See* Ind. Code § 35-33-6-4 ("A civil or criminal action against an owner or agent of a store . . . may not be based on a detention which was lawful under section 2 of this chapter.")

At the time of Wal-Mart's detention of Neff, Spannuth had completed his investigation. He had pulled the receipts in the system and viewed the store

videos. He had identified the cashiers and spoken with the managers about possible authorization to sell and purchase the steeply discounted tires. Based on this evidence, Spannuth, as Wal-Mart's agent, could reasonably believe that Neff that intentionally sold and purchased the tires at a price less than that approved by Wal-Mart with the intent to deprive Wal-Mart of part of its value. That constitutes probable cause for purposes of the Shoplifting Detention Act. *See Dietz*, 754 N.E.2d at 968. This alone, however, does not mean the test of reasonableness in manner and time has been met in this case. *See* I.C. § 35-33-6-2(c)(1)-(2).

[17] Turning to the reasonableness of the manner and time of detention by Wal-Mart, the designated evidence established that Neff's interview occurred in an office in the back of the store, out of view of Wal-Mart's customers. Following the interviews, Wal-Mart decided to report the three employees to the police for theft and contacted the local authorities. Neff acknowledged that he was detained at the store for between sixty and eighty minutes, much less than the two-hour timeframe contemplated by the Act. *See* I.C. 35-33-6-2(c).

[18] Neff now attempts to avoid the immunity awarded to Wal-Mart by the Shoplifting Detention Act by referencing his continued and repeated assertions of innocence and protestations of belief that Wilbur had authorized the sale. However, the relevant issue is not whether Neff committed the theft, but whether Wal-Mart had probable cause to believe that Neff committed theft. Furthermore, "the fact remains that our legislature has determined that a merchant's property rights must be protected, even at the risk of offending

people who are ultimately innocent of any wrongdoing. The boundaries within which merchants must conduct themselves during such detainments and searches are those of reasonableness." *Wal-Mart Stores, Inc. v. Bathe*, 715 N.E.2d 954, 962 (Ind. Ct. App. 1999), *trans. denied*. As such, the Act does not immunize a merchant from liability for negligence based upon allegations that it conducted an unreasonable search. Although reasonableness is generally a question for the factfinder to decide, we are of the opinion that if a jury were permitted to decide that Wal-Mart's actions in the instant case were unreasonable, then the immunity provided by the Act would be illusory indeed as any protestation of innocence by the suspected shoplifter would be sufficient to destroy the statutory immunity. *See id*. Accordingly, as Wal-Mart's actions were reasonable under the Act, the store is immune to any civil claims brought by Neff and we affirm the trial court's summary judgment on these claims. *See* I.C. § 35-33-6-4.

## IV. *Negligent Infliction of Emotional Distress*

[19] Relying on the modified impact rule, Neff maintains that the trial court erred by granting summary judgment to Wal-Mart on his claim for negligent infliction of emotional distress.

[20] To establish a claim of negligent infliction of emotional distress, a plaintiff must satisfy the requirements of either the modified impact rule or the bystander rule. *Atlantic Coast Airlines v. Cook*, 857 N.E.2d 989, 998 (Ind. 2006). Under the modified impact rule, a plaintiff may seek damages for negligent infliction of

emotional distress if he suffers "a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person[.]" *Shuamber v. Henderson*, 579 N.E.2d 452, 456 (Ind. 1991). Thus, a plaintiff who proceeds under the modified impact rule must plead that he suffered a direct physical impact. *Atlantic Coast Airlines*, 857 N.E.2d at 996. The direct impact referred to by Neff is being "touched by the arm from the store. Police escort from Wal[-]Mart en route to jail." (Appellant's Br. p. 33). However, these actions complained of were taken by Greencastle police officers, and not by Wal-Mart. In fact, Neff cannot point to any direct physical impact by Wal-Mart or its agents. Accordingly, we affirm the trial court's summary judgment in favor of Wal-Mart.

## V. *Intentional Infliction of Emotional Distress*

Besides negligent infliction of emotional distress, Neff also claims intentional infliction of emotional distress. Pointing to Spannuth's refusal to accept his protestations of innocence and offers to return the tires or pay the full price, Neff maintains that "[e]motional damage comes from public arrest, jailing, the ruination of employment prospect, the mental anguish"—"[o]ne would think fellow employees would at least grant a colleague the benefit of the doubt." (Appellant's Br. p. 33).

Intentional infliction of emotional distress is committed by one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional

distress to another. *Ledbetter v. Ross*, 725 N.E.2d 120, 123-24 (Ind. Ct. App. 2000). Liability will only be found where the defendant's conduct has been extreme and outrageous. *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 523 (Ind. Ct. App. 2001), *trans. denied*. It is not enough that the defendant has acted with an intent which is tortious or even criminal, or that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *See id*. Rather, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

[23] In *Dietz*, an employee was investigated for giving a customer an unauthorized discount. *Dietz*, 754 N.E.2d at 963-64. The employee asserted that the security manager who interviewed her accused her of substance abuse, shoplifting, and dishonesty in a gruff and intimidating manner. *Id*. at 970. We concluded that the employee's claim for intentional infliction of emotional distress failed as a matter of law because the security manager's "actions in this case [did] not constitute outrageous behavior." *Id*.

[24] Likewise here, we cannot conclude as a matter of law that Spannuth's conduct exceeded "all bounds usually tolerated by a decent society." *See id*. Wal-Mart acted reasonably as permitted under the Shoplifting Detention Act. It investigated whether a crime was committed, collected the available evidence, and interviewed the persons involved. Only after a thorough investigation was concluded did Wal-Mart inform the suspects that it had probable cause to

believe a crime had been committed and that it was calling the local police department. None of these actions constitute the extreme and outrageous conduct necessary to establish a claim for intentional infliction of emotional distress. Therefore, we affirm the trial court's summary judgment on this claim.

## VI. *Defamation*

Next, Neff asserts that there are genuine issues of material fact precluding summary judgment on his defamation claim. Specifically, in a five-line argument Neff contends that Wal-Mart "brought about the newspaper item [Neff] was arrested for theft[.]" (Appellant's Br. p. 31).

To establish a claim of defamation, a plaintiff must establish (1) the existence of a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. *Wartell v. Lee*, 47 N.E.3d 381, 384 (Ind. Ct. App. 2015), *trans. denied*. As the local newspaper published the communication Neff now complains about, Neff cannot bring a defamation claim against Wal-Mart. We affirm the summary judgment.

## VII. *Invasion of Privacy*

Lastly, Neff asserts that Wal-Mart invaded his privacy by unreasonably intruding upon his seclusion and by false light publicity. Besides identifying these two specific "branches" of the general tort of invasion of privacy, Neff supports his claim by maintaining merely that "[f]orcing [Neff] to jail, making known he is arrested for theft, invade privacy when unwarranted circumstances

visited on plaintiff falsely are portrayed by tortfeasor." (Appellant's Br. p. 31). As Neff failed to support his argument with cogent reasoning as to the application of the doctrine to the designated evidence, he waived his contention for our review. *See* Ind. Appellate Rule 46(A)(8)(a).

# CONCLUSION

[28] Based on the foregoing, we hold that the trial court properly entered summary judgment in favor of Wal-Mart on Neff's allegations sounding in negligence and tort and based on his arrest and termination by Wal-Mart.

[29] Affirmed.

[30] Vaidik, C. J. and Kirsch, J. concur