Myra E. **CREEL** and Claude Creel, **Appellants–Plaintiffs,**

v.

**I.C.E. & ASSOCIATES, INC.,** **Appellee–Defendant.**

No. 41A04–0112–CV–521.

Court of Appeals of Indiana.

July 30, 2002.

---

Peter Campbell King, Cline, King & King, Columbus, IN, Stan Hirsch, Indianapolis, IN, Attorneys for Appellants.

Andrew P. Wirick, Debra G. Richards, Hume Smith Geddes Green & Simmons, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Myra E. Creel and Claude Creel (the Creels) appeal the trial court's grant of summary judgment in favor of appellee-defendant I.C.E. & Associates, Inc. (I.C.E.). Finding that the undisputed material facts negate the element of intrusion into the Creels' seclusion on their invasion of privacy claim and the element of outrageous conduct on their intentional infliction of emotional distress claim, we affirm.

### FACTS

The undisputed facts are that Myra and Claude Creel are husband and wife. Claude is a pastor of Huntsville Evangelistic Community Church in Huntsville, Indiana. On May 13, 1994, Myra was involved in a motor vehicle collision and suffered serious injuries including a broken clavicle.

At the time of the accident, Myra was employed by Winona Memorial Hospital (the hospital) as a quality control specialist in the business department. As an employee of the hospital, Myra participated in its group long-term disability insurance plan, which was funded by an insurance policy issued by Fortis Benefits (Fortis). As a result of the injuries she sustained in the motor vehicle collision, Myra sought to collect long-term disability benefits under the policy. Fortis initially made payments to Myra following the accident. Thereafter, Fortis determined that Myra was no longer eligible for benefits under the policy and discontinued payments. Myra responded by seeking administrative review of Fortis' determination.

As part of its administrative review of Myra's appeal, on November 13, 1998, Fortis commissioned I.C.E., which is a licensed private detective agency, to conduct surveillance and videotape Myra's activities beginning on November 22, 1998.

The purpose of this surveillance was to confirm Myra's unemployment and to ascertain whether her activities were consistent with her medical diagnosis and disability determination. Among other things, Fortis instructed I.C.E. to videotape Myra's activities during services at her husband's church.

J.P. Renner, an I.C.E. investigator, worked on this assignment on four occasions, November 29, 1998, December 6, 1998, January 24, 1999, and March 7, 1999. On two of these occasions, Renner presented himself as a worshipper at scheduled church services at the Creels' church. Each time, Renner wore a sling on his arm that concealed a video camera. When Pastor Claude greeted Renner, Renner indicated that he was in the area visiting family or friends. The scheduled services were open to the public, and Renner entered the church via the open main entrance and was part of a congregation of approximately one hundred and forty people. No signs were posted indicating that only church members or invitees could attend or prohibiting videotaping within the church.

During the church service, Renner covertly videotaped Myra as she played piano on a stage in front of the congregation. He also videotaped Pastor Claude as he presided over the service. Renner did not inform the Creels about his videotaping and surveillance activities, nor did he seek the Creels' permission to videotape during church services.

On April 30, 1999, Fortis informed Myra that it had rejected her appeal regarding its denial of her disability benefits. The Creels subsequently learned about the videotape when they inquired about the basis for this denial.

 Thereafter, on August 30, 1999, the Creels filed a claim for damages against

I.C.E.[1] In their complaint, the Creels alleged invasion of privacy and intentional infliction of emotional distress[2] by I.C.E. in surreptitiously videotaping Myra and Pastor Claude during the church worship services. Claude also alleged loss of consortium. On June 25, 2001, I.C.E. filed a motion for summary judgment, asserting that there were no genuine issues of material fact concerning its lack of intent to inflict emotional distress upon the Creels and its lack of a physical intrusion upon them. The trial court granted I.C.E.'s motion for summary judgment on November 2, 2001. The basis for the trial court's determination was that the undisputed material facts negated the requisite element of intent in the Creels' claim of intentional infliction of emotional distress and negated the requisite elements of intent and intrusion into the Creels' seclusion in their invasion of privacy claim. The Creels now appeal.

## DISCUSSION AND DECISION
### I. Standard of Review

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 132 (Ind.Ct.App.1997), *trans. denied.* Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *City of Elkhart v. Agenda: Open Gov't, Inc.*, 683 N.E.2d 622, 625 (Ind.Ct.App.1997), *trans. denied.* For a defendant to prevail on its motion for summary judgment, it must show that the undisputed facts negate at least one element of the plaintiff's cause of action. *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 966 (Ind.Ct.App.2001). The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind.1994).

### II. The Creels' Claims
#### A. Invasion of Privacy

The Creels first contend that the trial court erred in granting I.C.E.'s motion for summary judgment on their invasion of privacy claim because a question of material fact exists regarding whether their emotional and physical seclusion and solitude was violated by I.C.E.'s covert videotaping of them during the church worship services. The Creels assert that a "Church sanctuary is unlike any other public place [because it] is a place where people go to seek peace of mind, solitude and physical seclusion from the world's problems as they seek an intimate relationship with the God of their choice." Appellants' Br. p. 9.

1. The Creels also filed a complaint against Fortis for allegedly improperly denying Myra disability benefits under the hospital's policy. The Creels subsequently settled their claims against Fortis. Appellee's App. p. 101.

2. The Creels also claimed a separate cause of action for the "tort of outrage." However, as the trial court observed, the terms outrage and intentional infliction of emotional distress both define the same tort in Indiana. *See Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997) (observing that "Indiana law ... provides protection for emotional injuries with a civil action for intentional infliction of emotional distress, also known as outrage").

Accordingly, they argue that they "had a reasonable expectation of privacy, solitude, or seclusion within the bounds of their Church worship service" which was invaded by I.C.E. Appellants' Br. p. 7.

The general tort known as invasion of privacy has four strands: (1) public disclosure of private facts; (2) unreasonable intrusion upon the seclusion of another; (3) appropriation of another's name or likeness; and (4) publicity that unreasonably places another in a false light before the public. *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 524 (Ind.Ct. App.2001), *trans. denied.* The Creels claim that I.C.E. invaded their privacy by intruding into their seclusion.[3]

To establish a claim for invasion of privacy by intrusion, a plaintiff must demonstrate that there was an "intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind.1991) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 117, at 854 (5th ed.1984)); *see Ledbetter v. Ross*, 725 N.E.2d 120, 123 (Ind.Ct.App.2000) (observing that intrusion upon the plaintiff's physical solitude or seclusion includes invading his home or other quarters). To rise to the level of tortious conduct, "the intrusion must be something which would be offensive or objectionable to a reasonable person." *Ledbetter*, 725 N.E.2d at 123.

Indiana courts have narrowly construed the tort of invasion of privacy by intrusion. In *Cullison*, our supreme court stated that the tort of invasion of privacy by intrusion requires intrusion into the plaintiff's private "physical" space. 570 N.E.2d at 31. There have been no cases in Indiana in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home. *See, e.g., Ledbetter*, 725 N.E.2d at 123 (holding that a single telephone call, involving no threats or abusive language, cannot as a matter of law be the basis for the tort of invasion of privacy by intrusion); *Terrell v. Rowsey*, 647 N.E.2d 662, 667 (Ind.Ct.App.1995) (determining that there was no actionable intrusion where a defendant opened the plaintiff's car door while the plaintiff sat in the car, reached behind the driver's seat and grabbed an empty beer bottle, without making physical contact with the plaintiff) *trans. denied; Cullison*, 570 N.E.2d 27, 31 (Ind.1991) (concluding that, while invasion of the plaintiff's home could constitute a claim for invasion of privacy, harassment of the plaintiff in a restaurant or on the public street outside his home could not).

More recently, in *Branham*, 744 N.E.2d at 524, this court was confronted with the question of whether intrusion into a person's emotional solace was sufficient to establish the tort of invasion of privacy. In that case, employees of the defendant posed and then took a photograph of a sleeping plaintiff in a sexually suggestive pose in the employee break room. *Id.* We declined to address whether emotional intrusion would suffice after determining that under either analysis—physical intrusion or emotional intrusion—the plaintiff's claim failed. *Id.* We rejected the plaintiff's claim of physical intrusion, because other employees were in the lunchroom when the plaintiff fell asleep and the employees used the break room to eat their lunches. *Id.* We also rejected the plaintiff's claim of emotional intrusion because he was "asleep

---

**3.** We note that while the Creels place great emphasis on the fact that I.C.E. was reimbursed by Fortis for the videotape footage, they do not make any claim of invasion of privacy by appropriation. This tort exists where the defendant appropriates the plaintiff's name or likeness for the defendant's benefit or advantage. *Felsher v. University of Evansville*, 755 N.E.2d 589, 601 (Ind.2001).

when the picture was posed and taken [and t]herefore he could not have suffered any emotional disturbance from it." *Id.*

■ Similarly, here, it is undisputed that the Creels were unaware of the videotaping as it occurred, and, therefore, they could not have suffered any emotional disturbance from being filmed. *See id.* Thus, even if intrusion upon one's emotional privacy would suffice to establish the tort of invasion of privacy by intrusion, we would not find such intrusion in this instance.

With respect to whether I.C.E. intruded on the Creel's physical solitude and seclusion by videotaping them during the church service, we note that they were neither alone nor secluded when the videotaping occurred. Renner, the I.C.E. investigator, videotaped the Creels at scheduled church services that were open to the general public. Appellants' App. p. 73, 133–39. There were no signs posted indicating that only church members or invitees could attend the services or stating that services could not be videotaped or could only be videotaped with church permission. Appellants' App. p. 73–74. Using a hidden camera, Renner. videotaped Myra as she played the piano on stage in full view of the entire congregation of approximately 140 people. Appellants' App. p. 129; Appellants' App. p. 264; Appellee's App. p. 36. Similarly, he videotaped Pastor Claude as he presided over the services, led prayer and share time, preached sermons, and gave benediction to the large gathering of worshipers. Appellants' App. p. 132–33. At no time did Renner have physical contact with Myra or Pastor Claude. While the Creels object to the covert videotaping, it simply captured activity that was open to the public, observed by many, and which Renner or any other of the church attendees could have testified to witnessing at trial.

Moreover, it is undisputed that Renner confined his videotaped surveillance to areas of the church that were open to the public. Specifically, he videotaped as he entered the church, sat in a pew as part of the congregation, and exited the building. Appellants' App. p. 74. At no time did he film into any closed area or area not visible from the church entrance, aisles, or pews where he sat during the service. Appellants' App. p. 74. Under these circumstances, we conclude as a matter of law that the Creels had no reasonable expectation of privacy in their activities. Thus, the trial court did not err in determining that no genuine issue of material fact existed on this issue, and in granting summary judgment in I.C.E.'s favor on the Creels invasion of privacy claim.

### B. Intentional Infliction of Emotional Distress

The Creels also contend that the trial court erred in granting I.C.E.'s summary judgment motion on their intentional infliction of emotional distress claim. According to the Creels, questions of fact exist regarding whether I.C.E.'s act of videotaping them during church worship services constituted outrageous conduct and whether I.C.E. had the requisite intent to harm. According to the Creels, I.C.E.'s conduct was outrageous because its "secret spy videotaping of persons during their worship and prayer" was "below the line of decency" and outside the "collective societal norm of civilized conduct" Appellants' Br. p. 12; Appellants' Reply Br. p. 11, 12. The Creels further assert that I.C.E.'s evil intent and recklessness can be inferred from its deception in "taking videos without permission, hiding, spying and selling those videos for personal gain." Appellants' Br. p. 14.

■ Our supreme court first recognized the tort of intentional infliction of emotional distress in *Cullison,* 570. N.E.2d

at 31. The requirements to prove this tort are "rigorous." *Ledbetter*, 725 N.E.2d at 124 (quoting Keeton et al., *supra* § 12, at 61). This tort arises when a defendant: (1) engages in "extreme and outrageous" conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another. *Bradley v. Hall*, 720 N.E.2d 747, 752 (Ind.Ct.App.1999). The intent to harm emotionally constitutes the basis of this tort. *Ledbetter*, 725 N.E.2d at 123–24. Further, the conduct at issue must exceed all bounds usually tolerated by a decent society and cause mental distress of a very serious kind. *Id.*

We have quoted with approval the comment to Section 46 of the Restatement (Second) of Torts in describing the extreme and outrageous conduct required to sustain a cause of action for this tort.

d. Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*See Branham*, 744 N.E.2d at 523; *Bradley*, 720 N.E.2d at 753; *Gable v. Curtis*, 673 N.E.2d 805, 809–10 (Ind.Ct.App.1996). What constitutes extreme and outrageous conduct depends, in part, upon prevailing cultural norms and values. *Bradley*, 720 N.E.2d at 753. "In the appropriate case, the question can be decided as a matter of law." *Dietz*, 754 N.E.2d at 970 (finding no outrageous conduct where a store security manager accused an employee of substance abuse, shoplifting, and dishonesty in a gruff and intimidating manner, where the security manager's actions occurred in the context of a detainment for the purpose of determining the extent of the employee's unauthorized conduct); *see also Conwell v. Beatty*, 667 N.E.2d 768, 775–77 (Ind.Ct.App.1996) (finding no outrageous conduct where a sheriff announced a deputy's arrest at a press conference and refused to assist that deputy in completing retirement forms); *Gable v. Curtis*, 673 N.E.2d 805, 809–11 (Ind.Ct.App.1996) (determining that there was no outrageous conduct where a contractor's wife telephoned a purchaser seven times in one hour, screaming and threatening to repossess the home and to come over, and stating repeatedly that the purchasers "would pay"); *cf. Bradley*, 720 N.E.2d at 753 (finding that a genuine issue of material fact existed as to whether the employee's supervisor engaged in extreme and outrageous conduct by allegedly shouting at the employee, criticizing her work in front of other employees, inquiring about the employee's menopause and whether her husband was sexually impotent from diabetes, and misrepresenting the company's intentions regarding the security of the employee's position).

We turn first to the Creels' assertion that there is a genuine issue of material fact regarding whether I.C.E.'s act of videotaping of them during church worship services constituted the requisite extreme and outrageous conduct to sustain this cause of action. It is undisputed that I.C.E. is a licensed private detective agency, and that its agent, Renner, videotaped

Myra pursuant to a routine investigation to uncover possible insurance fraud. Appellants' App. p. 73; Appellee's App. p. 35. In addition, it is undisputed that Renner feigned an arm injury in order to conceal his video camera, entered the church for a purpose other than worship and, once inside, secretly taped the Creels at the church service. Appellants' App. p. 74, 161, 162.

However, given the nature of this investigation it was necessary to employ covert, rather than overt, surveillance procedures.[4] Moreover, while I.C.E. obtained the videotape footage in a devious manner, it is undisputed that videotaping was not prohibited during church services and that Renner simply filmed Claude and Myra as they preached and performed, respectively, at an open service in full view of a large congregation. Appellants' App. p. 73–74, 129, 130–39; Appellants' App. p. 264. Accordingly, while I.C.E.'s conduct may be considered distasteful, we nevertheless

conclude as a matter of law that it did not rise to the level of outrage necessary to support a claim for intentional infliction of emotional distress.[5] Inasmuch as I.C.E. has negated the "outrageous conduct" element of this tort, we need not reach the issue of I.C.E.'s intent to cause harm to the Creels. *See Dietz,* 754 N.E.2d at 966. Thus, we conclude that the trial court did not err in granting I.C.E.'s motion for summary judgment on the Creels' claim for intentional infliction of emotional distress.[6]

Judgment affirmed.

SULLIVAN, J., and DARDEN, J., concur.

---

4. The Creels assert that there was no necessity for this investigation because I.C.E. could have relied upon her prior admission that she played piano during church services. Appellants' Reply Br. p. 9. To support this assertion, the Creels cite to a portion of the record containing a form that details information about Myra. Appellants' App. p. 262. The precise nature and purpose of this form is unclear; however, it originated from I.C.E. as part of its response to the Creels' request for production of documents, and appears to contain information pertaining to its investigation of Myra. Appellants' App. p. 262. The form contains Myra's personal information (such as her name, address, and physical description) and describes the nature of her injury. Appellants' App. p. 262. It also contains the statement: "SUSPICIONS: Possible [sic] involved in church activities." Appellants' App. p. 262. While this statement indicates that Fortis suspected that Myra was engaging in activities that were inconsistent with her medical diagnosis and disability determination, it does not indicate that Myra actually admitted to such activities. As such, there is no designated evidence establishing that Myra in-

formed Fortis that she played piano at church or that Fortis conveyed this information to I.C.E.

5. Because we have concluded as a matter of law based on the undisputed facts that I.C.E.'s acts did not constitute the requisite outrageous conduct, we need not address the Creels' claim that the trial court erred in granting I.C.E.'s motion to strike portions of the designated affidavits of various church members which characterized I.C.E.'s acts as outrageous or not those of a reasonable person.

6. Claude's loss of consortium claim is a derivative action and dependent on proof of the Creels' underlying claims against I.C.E. *See Durham ex. rel. Estate of Wade v. U–Haul Int'l,* 745 N.E.2d 755, 764–65 (Ind.2001). Inasmuch as we have determined that I.C.E. is entitled to summary judgment on the invasion of privacy and intentional infliction of emotional distress claims, we conclude that the trial court properly found that I.C.E. was also entitled to summary judgment on Claude's loss of consortium claims.