Gregory J. MILLS,
Appellant/Plaintiff/Counterclaim
Defendant,

v.

Dean KIMBLEY,
Appellee/Defendant/Counterclaimant.

No. 49A02–0902–CV–174.

Court of Appeals of Indiana.

July 23, 2009.

Rehearing Denied Oct. 6, 2009.

against him in his action against Appellee/Defendant/Counterclaimant Dean Kimbley for nuisance, common law and criminal trespass, and intentional infliction of emotional distress ("IIED"). In addition, Mills appeals the trial court's award of summary judgment in favor of Kimbley in his counterclaim against Mills for invasion of privacy. Upon appeal, Mills argues that there is a genuine issue of material fact with respect to each of the above claims, precluding summary judgment. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Mills and Kimbley are next-door neighbors. Mills lives at 310 West Edgewood Avenue in Indianapolis, where he has lived since March of 2004. Kimbley lives at 302 West Edgewood Avenue, which is the property adjacent to Mills's property on the east side, where he has lived since 1984.

Within approximately two months of his move to 310 West Edgewood Avenue, Mills began keeping a journal of what in his view were Kimbley's disruptive activities.[1]

P. Adam Davis, Davis & Sarbinoff, LLP, Indianapolis, IN, Attorney for Appellant.

Russell L. Brown, Clark, Quinn, Moses, Scott & Grahn, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Plaintiff/Counterclaim Defendant Gregory Mills appeals the trial court's award of summary judgment

1. Mills's statement of facts in his brief is largely based upon multiple references to omitted pages 157–62 of the Appellant's Appendix, and to his brief in opposition to summary judgment, which itself references "declarations" by Mills, perhaps contained in omitted pages 157–62, but not contained within the record before us. The specific allegations included in the appellate record are as follows:

(1) on June 25, 2004, Kimbley's marijuana smoke drifted into Mills's home;
(2) on July 24, 2004, Kimbley continuously called to the workmen hired by Mills to erect a fence on their property line, allegedly delaying and harassing them;
(3) on August 21, 2004, Mills observed a boundary stake had been removed from his property line and thrown into his yard;
(4) in August 2004, Kimbley's mulch pile spilled into Mills's lawn;

(5) on December 29, 2004, a snowball from Kimbley's property landed near Mills's girlfriend as she stood in his driveway;
(6) on April 19, 2005, Kimbley, who was allegedly drunk and standing at his own back door, yelled at Mills and, after police were called and informed Kimbley not to trespass, climbed onto his roof and yelled "Hi, neighbor" to Mills. App. p. 191;
(7) on April 28, 2005, an individual approached a pizza delivery man's vehicle in Mills's driveway, allegedly told the pizza delivery man he was at the wrong address, and further asked the delivery man to offer $125,000 for Mills's home;
(8) on September 4 and 11, 2005, Kimbley and his acquaintance drove an ATV onto Mills's property;
(9) on April 21, 2006, a contractor hired by Kimbley installed a sprinkler system which encroached upon Mills's property and temporarily interrupted his phone service;

This journal, subsequently submitted as designated evidence in the instant action, covers Kimbley's activities from May 21, 2004 through September 11, 2006, and is eighty-three pages long. On April 25, 2005, Mills began videotaping Kimbley's and his guests' activities without their permission. Due to Mills's videotaping activities, Kimbley claims to have been deprived the full use and enjoyment of certain portions of his property.

On May 8, 2006, Mills sent Kimbley a letter, in which he demanded that Kimbley not play loud music, permit loud and/or foul language, set off the house alarm, move his trash to Mills's property, enter any part of his property for any reason, contact him or his guests, nor tamper with his fence. In addition, Mills demanded that within seven days of receipt of the letter, Kimbley was to trim certain trees along the fence line and keep the property line clear of any obstructions such as "cinder blocks, mulch, and growth barriers." App. p. 40. Mills also demanded that within seven days Kimbley remove his sprinkler system, which Mills claimed was on his property, and repair a bare area of his yard, which Mills believed was caused by Kimbley's mulch pile. An inspection report issued by the City of Indianapolis found no violation in the placement of the sprinkler system.

Following Kimbley's receipt of this letter, the parties agreed to participate in a voluntary mediation session with the Marion County Prosecutor's Office. At that session the parties reached an agreement providing, *inter alia*, that Mills would trim the trees and that Kimbley's music was not to be so loud as to be heard in Mills's home.

In September of 2006, Mills listed his residence for sale through broker Century 21 with a list price of $139,900. Kimbley, accompanied by his son and a friend, toured Mills's residence with a real estate agent when Mills was not present.

On October 24, 2006, Mills filed the instant action alleging nuisance, common law and criminal trespass, and IIED. On October 3, 2007, Kimbley filed a counterclaim in which he alleged invasion of privacy through intrusion due to Mills's videotaping activities.

On July 25, 2008, Kimbley moved for summary judgment on both Mills's claim and his own counterclaim. On August 27, 2008, Mills filed a brief in opposition to summary judgment and designated as evidence, *inter alia*, his journal of Kimbley's activities. Following an October 20, 2008 hearing, the trial court granted summary judgment against Mills with respect to his claims of nuisance, common law and criminal trespass, and IIED, and in favor of

(10) in October 2006, Kimbley toured Mills's house with a real estate agent; and

(11) Kimbley's home security system signaled a false alarm on multiple occasions.

We are aware that Mills pointed to certain other offenses allegedly supported by Exhibit A, which is contained in the appellate record, but these offenses were not supported by specific or reliable citations. For example, Mills alleged that Kimbley had numerous visitors who drove across his yard. In support, Mills referenced Exhibit A, page 8, which does not support his allegation. Mills also alleged that the mulch pile problem occurred "from August 2004 through the fall." App. p. 145.

Our review is confined to the specific August 2004 date. We decline to search Exhibit A for supporting facts occurring during the unspecified "fall" time frame. Mills also alleged that Kimbley's house alarm sounded at all times of the day and night during the "winter" of 2004–2005 and in the "ensuing year." App. p. 145. Although these references are not adequately specific, Kimbley does not dispute that his home alarm was improperly triggered on several occasions, so we include this allegation. Lastly, Mills alleged that Kimbley and an acquaintance entered his yard on March 30, 2004. This journal entry is not included in Exhibit A.

Kimbley in his counterclaim for intrusion. The trial court scheduled a subsequent hearing for damages on Kimbley's counterclaim. This appeal follows.

## DISCUSSION AND DECISION

Upon appeal, Mills challenges the trial court's entry of summary judgment against him in each of his claims for nuisance, common law trespass, criminal trespass, and IIED, and in favor of Kimbley on his counterclaim of intrusion. In support of his challenge, Mills points to the facts alleged in his journal and in his brief, and argues that they demonstrate genuine issues of material fact which preclude summary judgment.

### I. Standard of Review

 Under Indiana Trial Rule 56(C), summary judgment is appropriate when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In reviewing summary judgment, this court applies the same standard as the trial court and construes all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Payton v. Hadley,* 819 N.E.2d 432, 437 (Ind.Ct.App.2004). Where material facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Id.* at 438. The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Id.* Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *See Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely

aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

### II. Designation of Evidence

 As a preliminary matter, Kimbley claims that Mills's designation of the entirety of his journal does not comport with the specificity requirements of Indiana Trial Rule 56(C). Trial Rule 56(C) does not mandate either the form of designation, *i.e.,* the degree of specificity required, or its placement, *i.e.,* the filing in which the designation is to be made. *Filip v. Block,* 879 N.E.2d 1076, 1081 (Ind.2008). Trial Rule 56(C) does compel parties to identify the "parts" of any document upon which they rely. *Id.* The Rule thus requires sufficient specificity to identify the relevant portions of a document, and so, for example, the designation of an entire deposition is inadequate. *Id.* Page numbers are usually sufficient, but a more detailed specification, such as supplying line numbers, is preferred. *Id.*

 Parties may choose the placement of evidence designation. *Id.* Designation may be placed in a motion for summary judgment, a memorandum supporting or opposing the motion, a separate filing identifying itself as the designation of evidence, or an appendix to the motion or memorandum. *Id.* If a party designates both specific lines or text and also more general identification of the document containing the specified lines, the court may limit that party to the more specific designation. *Id.*

 Here, while Mills references the entirety of his journal in his designation of evidence and appellate brief, Mills specified only certain portions of that journal in his brief in opposition to summary judgment. Consistent with the rules in *Filip* requiring sufficiently specific designations for purposes of identifying rele-

vant portions of a document and permitting consideration of specific designations over general ones, our consideration of Mills's journal, Plaintiff's Exhibit A, will be limited to those specific designations referenced in his summary judgment brief.

## III. Analysis

### A. Nuisance

In Indiana, nuisances are defined by statute. *Wernke v. Halas,* 600 N.E.2d 117, 120 (Ind.Ct.App.1992). Indiana Code section 32–30–6–6 (2006) defines an actionable nuisance as follows: "Whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." This court has traditionally distinguished between two types of nuisance: a public nuisance, which affects an entire neighborhood or community; and a private nuisance, which affects only one individual or a determinate number of people. *See Hopper v. Colonial Motel Props., Inc.,* 762 N.E.2d 181, 186 (Ind.Ct.App.2002), *trans. denied.* A private nuisance arises when it is demonstrated that one party uses his property to the detriment of the use and enjoyment of the property of another. *Id.*

Both public and private nuisances are further subdivided into nuisances *per se,* or nuisances at law, and nuisances *per accidens,* or nuisances in fact. *Wernke,* 600 N.E.2d at 120. "A nuisance *per se,* as the term implies, is that which is a nuisance in itself, and which,

therefore, cannot be so conducted or maintained as to be lawfully carried on or permitted to exist." *Id.* (quotation omitted). A house of prostitution and an obstruction that encroaches on the right-of-way of a public highway, for example, are nuisances *per se. Id.* On the other hand, an otherwise lawful use may become a nuisance *per accidens* by virtue of the circumstances surrounding the use. *Id.*

It is logical, therefore, that the determination that something is a nuisance *per se* is a question of law, and the determination of a nuisance *per accidens,* a question "for the jury or the judge as trier of fact." *Id.* This latter determination is to be made by the trier of fact in light of all the surrounding facts and circumstances, with the dispositive question being " 'whether the thing complained of produces such a condition as in the judgment of reasonable persons is naturally productive of actual physical discomfort to persons of ordinary sensibility, tastes, and habits.' " *Id.* at 120–21 (quoting *Wendt v. Kerkhof,* 594 N.E.2d 795, 797 (Ind.Ct.App. 1992)). Summary judgment, which by definition resolves only those cases lacking material factual disputes, is rarely appropriate in *per accidens* nuisance cases. *Id.* at 121.

Here, Mills does not allege that Kimbley's use of his land is illegal[2] or that it affects persons other than himself and his household. Accordingly, he is alleging a private, *per accidens* nuisance. Mills's nuisance claim during the summary judgment proceedings was based upon Kimbley's alleged loud music. Yet the record

---

**2.** Although Mills's designated evidence includes the allegation that Kimbley's marijuana smoke drifted onto his property, he did not develop a marijuana-related argument with respect to his nuisance claim or argue that the marijuana smoke constituted a nuisance *per se* to be reviewed as a question of law.

Indeed, Mills's nuisance challenge is based entirely upon his claim that the nuisance allegations presented questions of fact. Accordingly, we will not address Mills's marijuana claim or develop an analysis in this opinion to address nuisances *per se.*

on appeal does not contain Mills's apparent "declaration" regarding this alleged loud music, and none of the specified portions of Exhibit A reference such loud music. Although Mills's designated Exhibits C and D indicate that he told Kimbley not to play loud music and that he and Kimbley agreed during the June 22, 2006 mediation proceeding that Kimbley's music should not be heard in Mills's home, Mills points to no specifically designated evidence contained in the record on appeal supporting his allegation that loud music was played. Mills's failure to provide adequate record support for his challenge to the trial court's summary judgment waives his claim on this ground. *See* Ind. Appellate R. 46(A)(8)(a) (providing that the appellant's argument must be supported by cogent reasoning and citations to authorities and parts of the appendix relied on).

To the extent Mills's nuisance claim was based upon allegations other than those regarding loud music, his non-specific catchall references to "those facts as explicitly identified *supra,*" most of which are not part of the record on appeal, and "all of those nuisance-related facts and instances set forth in extreme detail as contained in Appellant's 88–page, single-spaced, 10–point font Journal" are not adequately specific to support his claim that a genuine issue of material fact remains on his nuisance claims. Appellant's Br. p. 11. Accordingly, we deem any additional allegations of nuisance by Mills waived. *See id; see also Filip,* 879 N.E.2d at 1081 (requiring parties to designate specific parts of documents upon which they rely).

## B. Trespass

### 1. Common Law Trespass

In his complaint, Mills alleged that Kimbley had committed common law trespass. It is a general rule of tort law that

[o]ne who recklessly or negligently, or as a result of an abnormally dangerous activity, enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or [to] a thing or a third person in whose security the possessor has a legally protected interest.

*Lever Bros. Co. v. Langdoc,* 655 N.E.2d 577, 582 (Ind.Ct.App.1995) (quoting RE-STATEMENT (SECOND) OF TORTS § 165 (1965)). A plaintiff in a trespass action must prove that he was in possession of the land and that "the defendant entered the land without right." *Ind. Mich. Power Co. v. Runge,* 717 N.E.2d 216, 227 (Ind.Ct.App. 1999) (quotation omitted). " 'If the plaintiff proves both elements he is entitled to nominal damages without proof of injury.' " *Id.* (quoting *Sigsbee v. Swathwood,* 419 N.E.2d 789, 799 (Ind.Ct.App.1981)). If the plaintiff proves any additional injury, proximately resulting from the trespass, the plaintiff is entitled to compensatory damages. *Sigsbee,* 419 N.E.2d at 799.

Here, Mills designated evidence in support of his trespass allegations, specifically that (1) marijuana smoke drifted from Kimbley's house onto his property; (2) Kimbley's mulch pile spilled into Mills's lawn; (3) Kimbley installed a sprinkler system which encroached upon Mills's property and temporarily interrupted his phone service; (4) Kimbley and his acquaintance drove an ATV across Mills's property; and (5) Kimbley, his son, and his son's friend toured Mills's property with a real estate agent after having been told they were not welcome anywhere on Mills's property.

Before considering Mills's multiple allegations of trespass, we first address

Kimbley's claim that only the fifth alleged act of trespass could support a trespass action because it was the only act which occurred after Kimbley had been warned not to enter Mills's property. While a criminal trespass claim under Indiana Code section 35–43–2–2(a)(1) (2006) requires demonstration that the person entering the property has previously been denied entry, *see Blakney v. State*, 819 N.E.2d 542, 545 (Ind.Ct.App.2004), this is not the stated standard for common law trespass claims, which require only that the plaintiff be in possession of property and the defendant enter that property without the right to do so. We therefore cannot conclude that Mills's common law trespass claims based upon the above alleged facts are unavailable because they occurred before Mills sent Kimbley the letter denying him entry to his property.

The trial court entered summary judgment against Mills on the grounds that there were no facts demonstrating that the sprinkler system was on Mills's property or that Kimbley had intentionally entered Mills's property to install it, and because Kimbley, who was accompanied by a real estate agent while touring Mills's home, had a reasonable belief that he was authorized to be there. While Kimbley designated evidence, including his own affidavit as well as certain of Mills's journal entries, indicating that the sprinkler system and its trenches did not encroach onto Mills's property, Mills's designated evidence indicated to the contrary, that the sprinkler system did encroach onto his property. To the extent that Kimbley opposed summary judgment on the basis of certain

designated evidence which contradicted Mills's designated evidence, we conclude that this disputed evidence creates a genuine issue of material fact.

■■■■ The trial court's summary judgment also rested upon Kimbley's allegation that Mills had presented no facts indicating that Kimbley had entered Mills's property intentionally. Under Indiana's summary judgment standard, merely asserting that the plaintiff has failed to produce evidence on each element of a claim is insufficient to entitle the defendant to the judgment sought. *See Runge*, 717 N.E.2d at 227. In any event, while an actor must be acting voluntarily to commit a trespass, it is not necessary that the actor intend—or even know—that he is committing a trespass. *See Garner v. Kovalak*, 817 N.E.2d 311, 313–14 (Ind. Ct.App.2004). Further still, to the extent it is relevant, intent is a question of fact under Indiana case law. *Horseman v. Keller*, 841 N.E.2d 164, 167 (Ind.2006).

■■■■ Each of Facts (1) through (5), above, alleges some entry by Kimbley—or by a thing allegedly caused by Kimbley— onto Mills's property without the right to do so.[3] Whether such an entry did occur as alleged in Mills's designated evidence, and whether it was unauthorized, are questions of material fact, rendering summary judgment improper on Mills's common law trespass claims.

### 2. Criminal Trespass

Mills also alleged that Kimbley had committed criminal trespass under Indiana

---

**3.** To the extent there is question regarding the ability of marijuana smoke to create a trespass, *see Lever Bros. Co.*, 655 N.E.2d at 582 (noting as a novel issue whether the entry of noxious material onto one's property constitutes a trespass), we merely conclude that summary judgment is not the proper disposition for this claim and express no opinion as to the likelihood of success on the merits at trial. *See Runge*, 717 N.E.2d at 228 (concluding that summary judgment is improper means for disposing of trespass claim even in circumstances where plaintiff's allegation of trespass by electric and magnetic fields was not necessarily a cognizable trespass claim).

Code section 35–43–2–2, for which he sought treble civil damages under Indiana Code section 34–24–3–1 (2006).[4] Section 35–43–2–2 includes several definitions for criminal trespass and includes circumstances in which a person knowingly or intentionally enters real property after having been denied entry, or when a person knowingly or intentionally enters another person's dwelling without his consent.

 The mere fact that Kimbley and his party, who toured Mills's house with a real estate agent, claim to have been invitees lacking the proper *mens rea,* does not preclude Mills's criminal trespass allegations as a matter of law. "The belief that one has a right to be on the property of another will defeat the *mens rea* requirement of the criminal trespass statute if it has a fair and reasonable foundation." *A.E.B. v. State,* 756 N.E.2d 536, 541 (Ind. Ct.App.2001). It is for the trier of fact to determine whether the defendant believed that he had a right to be on the property of another and whether that belief had a fair and reasonable foundation. *Id.* Here the designated evidence creates a genuine issue of material fact regarding Kimbley's *mens rea* in touring Mills's home. Kimbley designated evidence—including an offer to purchase and a $1,000 check in earnest money—demonstrating what he argues was a genuine wish to purchase the property and by extension, a good-faith belief that he was entitled to tour the home. Yet the undisputed designated evidence also shows that Mills ordered Kimbley and his guests never to enter onto "any part" of his property "for any reason," suggesting that Kimbley would have known that his entry onto Mills's property was unauthorized, regardless of Kimbley's

purposes. App. p. 39. Given the genuine issue of material fact regarding Kimbley's *mens rea* while touring Mills's house, the trial court erred in granting summary judgment in favor of Kimbley on Mills's criminal trespass claim. Accordingly, we reverse the trial court's summary judgment with respect to Mills's trespass and criminal trespass claims and remand for further proceedings.

## C. IIED

 Mills further claims that the trial court erred in granting summary judgment against him on his IIED claim. This tort, which was first recognized by the Indiana Supreme Court in *Cullison v. Medley,* 570 N.E.2d 27 (Ind.1991), is committed when a person engages in extreme and outrageous conduct that intentionally or recklessly causes severe emotional distress to another. *Dietz v. Finlay Fine Jewelry Corp.,* 754 N.E.2d 958, 970 (Ind. Ct.App.2001). Rigorous requirements must be met to prove the tort. *Id.* The conduct at issue must exceed all bounds usually tolerated by a decent society and must cause mental distress of a very serious kind. *Id.* In the appropriate case, the issue may be decided as a matter of law. *Id.*

As with his nuisance claim, Mills's challenge to the trial court's summary judgment on his claim of intentional infliction of emotional distress merely references "those facts as explicitly identified *supra,*" and "all of those emotional distress-related facts and instances set forth in extreme detail as contained in Appellant's 88–page, single-spaced, 10–point font Journal." Appellant's Br. p. 14. Because most of the facts identified "supra"—many of which

---

4. Under Indiana Code section 34–4–30–1, the predecessor statute to section 34–24–3–1, a criminal conviction is not a condition precedent to recovery, and the claimant need only prove by a preponderance of the evidence that the criminal act was committed by the defendant. *See White v. Indiana Realty Associates. II,* 555 N.E.2d 454, 456 (Ind.1990).

apparently alleged Kimbley's more egregious acts—are not part of the appellate record, and because Mills may not merely reference the entirety of a lengthy document in support of his claims, we are left to speculate about which alleged acts by Kimbley serve as the basis of Mills's emotional distress claim. We are therefore unable to evaluate the adequacy of this claim as a matter of law. Accordingly, we deem Mills's challenge to the trial court's summary judgment on his IIED claims is waived. *See* Ind. Appellate R. 46(A)(8)(a) (providing that the appellant's argument must be supported by cogent reasoning and citations to authorities and parts of the appendix relied on); *see also Filip*, 879 N.E.2d at 1081 (requiring parties to designate specific parts of documents upon which they rely).

**D. Invasion of Privacy by Intrusion**

■ Mills also challenges the trial court's grant of summary judgment in favor of Kimbley on his counterclaim against Mills alleging invasion of privacy through intrusion. The general tort known as invasion of privacy has four strands: (1) public disclosure of private facts; (2) unreasonable intrusion upon the seclusion of another; (3) appropriation of another's name or likeness; (4) publicity that unreasonably places another in a false light before the public. *Creel v. I.C.E. & Assoc., Inc.*, 771 N.E.2d 1276, 1280 (Ind.Ct.App. 2002) (citing *Branham v. Celadon Trucking Servs., Inc.*, 744 N.E.2d 514, 524 (Ind. Ct.App.2001)).

■ To establish a claim for invasion of privacy by intrusion, a plaintiff must demonstrate that there was an " 'intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search.' " *Id.* (quoting *Cullison*, 570 N.E.2d at 31 (inter-

nal citation omitted)). To rise to the level of tortious conduct, " 'the intrusion must be something which would be offensive or objectionable to a reasonable person.' " *Id.* (quoting *Ledbetter v. Ross*, 725 N.E.2d 120, 123 (Ind.Ct.App.2000) (internal quotation omitted)).

■ Indiana courts have narrowly construed the tort of invasion of privacy by intrusion. *Id.* According to the Indiana Supreme Court, the tort of invasion of privacy requires intrusion into the plaintiffs private "physical" space. *Cullison*, 570 N.E.2d at 31, *cited in Creel*, 771 N.E.2d at 1280. There have been no cases in Indiana in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home. *Id.*

Here, Kimbley alleged that Mills had videotaped him and his guests in the private areas of his garage and the room above his garage, as well as in his backyard pool and other areas of his yard which were allegedly fully shielded from view from Edgewood Avenue. The trial court granted summary judgment in his favor by finding as a matter of law that a reasonable person would find Mills's ongoing unauthorized videotaping to be offensive.

■ In his answer to Kimbley's counterclaim, Mills disputed that the areas where he had videotaped Kimbley were fully shielded from Edgewood Avenue, and it is unclear from the designated evidence, including the video, that they were. The extent to which videotaping activities occur within public view is relevant to intrusion claims. In *Creel*, this court affirmed the trial court's grant of summary judgment against a plaintiff alleging intrusion against a defendant for videotaping her in church.[5] 771 N.E.2d at 1278. In affirm-

---

5. The defendant was hired by an insurance company from which the plaintiff had sought

long-term disability benefits. *Creel*, 771 N.E.2d at 1278.

ing, this court paid special attention to the facts that the defendant had confined his videotape surveillance to areas of the church which were open to the public and that he had never filmed any closed area or area not visible from the church entrance, aisles, or pews. *Id.* at 1281. Here, in contrast, there is a genuine issue of material fact regarding the extent to which Mills's surveillance of Kimbley's activities was not otherwise open to the public.[6]

In addition, the trial court found as a matter of law that a reasonable person would find Mills's ongoing unauthorized videotaping to be offensive. Given the fact-intensive nature of the kind of videotaping at issue and its probable impact on a reasonable person, we are inclined to view this question as one of fact rather than one of law. Accordingly, we reverse the trial court's summary judgment in favor of Kimbley on his counterclaim of intrusion and remand for a trial on the matter.

## IV. Conclusion

Having concluded that the trial court erred in entering summary judgment with respect to Mills's trespass claims and Kimbley's intrusion counterclaim, and that Mills's challenges to the trial court's summary judgment on his nuisance and IIED claims are waived, we affirm in part, reverse in part, and remand to the trial court for a trial on Mills's trespass claims and Kimbley's intrusion counterclaim.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded with instructions.

CRONE, J., and BROWN, J., concur.

---

**6.** Mills points out that in determining the actionable nature of an intrusion claim, this court considers whether the means used is abnormal and the defendant's purpose for obtaining the information. *Watters v. Dinn,* 633 N.E.2d 280, 290 (Ind.Ct.App.1994), *trans. denied.* Here, Mills argues that his purpose for videotaping Kimbley was merely to gather evidence for a possible lawsuit. Given Mills's lack of designated evidence to support his alleged purpose, we are unpersuaded that summary judgment may be reversed on this ground.