**John DYER, David White and Maurice Dillender, Appellants–Plaintiffs,**

v.

**James H. HALL and Nu–Plaza Yacht Club, Appellees–Defendants.**

No. 82A01–0910–CV–510.

Court of Appeals of Indiana.

June 16, 2010.

Catherine A. Nestrick, Bamberger, Foreman, Oswald and Hahn, LLP, Evansville, IN, Attorney for Appellants.

Jeffrey W. Henning, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorney for Appellees.

## OPINION

MAY, Judge.

The plaintiffs John Dyer, David White, and Maurice Dillender (collectively "the Landowners") own land on the Ohio River. They asked for an injunction and damages, claiming boat docks owned by James Hall and the Nu–Plaza Yacht Club (collectively "Hall") extend in front of their lots and interfere with their use of the river. The trial court granted summary judgment for Hall, finding the Landowners' riparian rights do not extend beyond the river's low

water mark and the docks did not interfere with their use of the river. The Landowners raise eight allegations of error, which we consolidate and restate as:

1. The trial court erred in finding the Landowners' riparian rights extend only to the low water mark;

2. The trial court erred in finding the docks are not a private nuisance because they do not interfere with the Landowners' use of or access to the river;

3. The trial court erred in finding the construction and maintenance of deadmen [1] located on two Landowners' lots do not amount to a trespass.

We reverse.[2]

## FACTS AND PROCEDURAL HISTORY

The Landowners' lots are along the Ohio River in an area of Vanderburgh County called Dogtown. The lots were part of a twenty-two acre parcel that was subdivided in 1996. The Landowners subsequently bought their lots. The Yacht Club is a marina that has been in its current location in front of the Landowners' lots since at least 1970. Hall purchased the Yacht Club in 2000. The marina consists of one dock that extends into the river and two docks that run both upstream and downstream.

In 1980, the owner of the Yacht Club placed deadmen along the shoreline to help anchor the docks.[3] Two are on Dillender's

---

1. A "deadman" is a pipe driven into the ground to which cables are attached to hold the docks in place. (Br. of Appellants at 4.)

2. We heard oral argument April 30, 2010 at the Posey County Courthouse in Mount Vernon as part of the Law Day observance. We thank the Posey County Courts for their hospitality and commend counsel on the quality of their oral advocacy.

3. In his Statement of Facts, Hall asserts the Army Corps of Engineers, which regulates use of the river, "requested that the deadmen be placed along the shore line to help anchor the Yacht Club." (Br. of Appellees at 3.) Hall cites pages of the record that refer to "permits from the Corps of Engineers," (Appellees' App. at 61), but do not support the statement the Corps "requested" the placement of the deadmen.

property and one is on Dyer's. Neither landowner gave "Hall or anyone else permission to have this deadman located upon his property." (Appellants' App. at 57) (Dyer affidavit); (*id.* at 63) (Dillender affidavit).

Landowner White asserts the Yacht Club docks prevent him from having a usable dock or navigating a boat to and from the shoreline. Dillender stated in a deposition that the docks "hinder" him from going into the river:

> If I've got a pontoon boat I have to back all of the way out past where he has extended the slip back all of the way out to get to the river. You can't turn around in there because he has come in on me and he has shortened the distance between my place and his boats that he parks out there and I've had them, the boats, actually hit my boat trying to get around.

(*Id.* at 66.)

The Landowners filed a complaint requesting injunctive relief and damages. Hall moved for summary judgment. The trial court granted summary judgment for Hall, finding the Landowners' riparian rights do not extend beyond the river's low water mark and the docks did not interfere with their use of the river.

## DISCUSSION AND DECISION

On appeal from a summary judgment, we apply the same standard applicable in the trial court. *Bader v. Johnson,* 732 N.E.2d 1212, 1216 (Ind.2000). We determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Id.* Any doubt as to a fact or an inference to be drawn is resolved in favor of the non-moving party, here the Landowners. *Id.* Where the issue presented on appeal is a pure question of law, we review the matter *de novo. Id.* "Appellate courts independently, and without the slightest deference to trial court determinations, evaluate those issues they deem to be questions of law. A pure question of law is one that requires neither reference to extrinsic evidence, the drawing of inferences therefrom, nor the consideration of credibility questions for its resolution." *Id.* (quoting 4A Kenneth M. Stroud, Indiana Practice § 12.3 (2d ed. 1990)).

The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and that can be resolved as a matter of law. *Dunaway v. Allstate Ins. Co.,* 813 N.E.2d 376, 380 (Ind.Ct.App.2004). A summary judgment is clothed with a presumption of validity on appeal, and the appellant bears the burden to show the trial court erred. *Id.* Nevertheless, the record must be carefully scrutinized to ensure the nonmoving party was not improperly denied a day in court. *Id.* We accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.* If the summary judgment can be sustained

---

Hall also asserts landowner Dillender and a prior owner of the Yacht Club "together installed" a deadman on Dillender's property, and "Dillender is now citing to this deadman for a trespass claim." (Br. of Appellees at 3.) This, too, mischaracterizes the parts of the record on which Hall relies. Nothing on the pages he cites indicates the *installation* of the deadman is the basis for Dillender's trespass claim. Dillender referred to the deadman as his own, and when asked why there was a trespass, he responded "[Hall has] his cables on it. He's been asked to remove them." (Appellees' App. at 94.) Nor do the pages to which Hall directs us support Hall's statement that Dillender was involved in installing the deadman. However, elsewhere in the record Dillender states the deadman was installed by "Me and Walter McFarland," a prior owner of the Yacht Club. (*Id.* at 95.)

on any theory or basis in the record, we will affirm. *Id.*

### 1. The Nature and Extent of the Landowners' Riparian Rights

 An owner whose property abuts a river has certain riparian rights associated with ownership of the property:

The term "riparian rights" indicates a bundle of rights that turn on the physical relationship of a body of water to the land abutting it. Riparian rights are special rights pertaining to the use of water in a waterway adjoining the owner's property. Riparian rights of the owners of lands fronting navigable waters are derived from common law as modified by statute. According to some authorities, riparian rights do not necessarily constitute an independent estate and are not property rights *per se;* they are merely licenses or privileges. Stated differently, they constitute property rights of a qualified or restricted nature.

**4.** The trial court's decision appears to confuse riparian rights and property *ownership* rights. It concluded "a riparian owner takes to the low water mark, not to the center as claimed by Plaintiffs." (Appellants' App. at 20.) However, in support of that conclusion the court cited a decision where we determined the extent of an owner's title to property: *Irvin v. Crammond,* 58 Ind.App. 540, 108 N.E. 539, 541 (1915) ("where land is bounded by the Ohio river on the Indiana side, *the title* of the owner extends to low-water mark") (emphasis supplied).

The trial court went on to determine the Landowners' "riparian rights do not include the extension of their *onshore boundaries* to the middle of the Ohio River. Instead, their riparian ownership stops at the low water mark. Therefore, Plaintiffs' claim that their *property boundaries* extend from the shoreline to the middle of the Ohio River is denied." (Appellants' App. at 21) (emphasis supplied). It does not appear the Landowners made any claim that they "take title" to the center of the river. And, while property *ownership* rights might end at the low water mark, *ripar-*

*Center Townhouse Corp. v. City of Mishawaka,* 882 N.E.2d 762, 767–68 (Ind.Ct.App. 2008) (citations omitted), *trans. denied.* A riparian landowner does not own the water in a stream that runs along his property, but he does own the right to the reasonable use of the stream as part of the title to his real estate.[4] *Id.* at 768. In Indiana, the rights associated with riparian ownership generally include: (1) the right of access to navigable water; (2) the right to build a pier out to the line of navigability;[5] (3) the right to accretions;[6] and (4) the right to a reasonable use of the water for general purposes such as boating and domestic use. *Id.* at 771.

Ind.Code § 14–29–1–4 provides:

(a) Subject to subsection (b), a riparian owner of land in Indiana bordering upon a navigable stream may do the following:

(1) Build and maintain:

---

**4.** ian rights could not. Those rights must extend beyond the low water mark in order for the property owner to exercise his right of access to navigable water, right to build a pier out to the line of navigability, and right to reasonable use of the water. *See, e.g., Center Townhouse,* 882 N.E.2d at 771.

**5.** Neither the trial court nor the parties provide a definition for "line of navigability." We have mentioned that phrase in three decisions, but have not defined or explained it. No definition appears in the Indiana Code, the Indiana Administrative Code, the Code of Federal Regulations, or Black's Law Dictionary. The Washington Administrative Code defines "line of navigability" as "a measured line at that depth sufficient for ordinary navigation as determined by the board of natural resources for the body of water in question." Wash. Admin. Code § 332–30–106.

**6.** "Accretion" is the gradual accumulation of land by natural forces, such as the deposits of soil, sand or clay caused by running water to land situated on the bank of a river. *Black's Law Dictionary* 21 (Seventh ed. 1999).

(A) within the premises bordering on the stream; and

(B) upon the submerged land beneath the water; a pier, wharf, dock, or harbor in aid of navigation and commerce.

(2) Use, occupy, and enjoy the constructed item as appurtenant to the owner's land.

(b) A pier, dock, or wharf may not do any of the following:

(1) Extend into the stream further than is necessary to accommodate shipping and navigation.

(2) Obstruct shipping and navigation.

"Whether this statute is a complete definition of riparian rights or is meant only as a limitation on what types of obstructions a riparian owner may place in a stream or river is not clear." *Center Townhouse*, 882 N.E.2d at 771. The statute has been applied to require a landowner to remove his pier when its placement infringed on his neighbor's pier. *Id.*

The Landowners argue "the marina's docks greatly exceed the upper and lower boundaries of its riparian zone, and encroach upon" theirs. (Br. of Appellants at 11.) They cite *Bainbridge v. Sherlock*, 29 Ind. 364 (1868). In that case, Bainbridge owned land on the Ohio River in Madison and operated a wharf. He sued Sherlock, who operated a neighboring wharf, because boats that landed at Sherlock's wharf were blocking access by boats that wanted to land at Bainbridge's wharf. Our Indiana Supreme Court noted:

They (riparian owners) have the right to construct wharves, buildings, and other improvements in front of their lands, so long as the public servitude is not thereby impaired. They are a part of the realty to which they are attached, and pass with it. Certainly no one can occupy, for his individual purposes, the water in front of such riparian proprietor, and

the attempt of any person to do so would be a trespass.

*Id.* at 373 (quoting *Rice v. Ruddiman*, 10 Mich. 125 (1862)). Therefore, boats navigating the Ohio River "had no right to land on the wharf of the plaintiff unless by his consent. The defendants were trespassers for each act of injury to the plaintiff caused by landing their boats." *Id.*

It is not apparent that *Bainbridge* stands for the propositions that a riparian owner's structure can be placed only "in front of" the owner's land, that a dock may not extend in front of another's land so long as it does not block the other landowner's access to the river, or that a riparian owner may not "encroach" on the other owner's "riparian zone." Ind.Code § 14–29–1–4 provides only that a dock may not "[e]xtend into the stream further than is necessary to accommodate shipping and navigation" or "[o]bstruct shipping and navigation."

As riparian rights pertain to "the *use* of water in a waterway adjoining the owner's property," and are not property rights *per se*, *Center Township*, 882 N.E.2d at 768, the determinative question is whether Hall's docks interfered with the Landowners' access to and use of the River, and not where the Landowners' *title* ended. Hall cites the list of riparian owners' rights from *Center Townhouse* noted above, and asserts the Landowners are able to exercise all those rights. As explained below, the Landowners' designated evidence gives rise to a genuine issue of fact as to whether there was such interference, and summary judgment for Hall was therefore improper.

### 2. *Nuisance*

The trial court found Hall's docks were not a private nuisance because "the Plaintiffs have reasonable use and

access to the river." (Appellants' App. at 21.) Whatever is "(1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind.Code § 32–30–6–6. If a body of water is mere surface water, nuisance law is inapplicable. *Trowbridge v. Torabi*, 693 N.E.2d 622, 626 (Ind.Ct.App. 1998), *trans. denied* 706 N.E.2d 172 (Ind. 1998). But if it is a natural watercourse, nuisance law may apply. *Id.* A private nuisance arises when it is demonstrated that one party uses his property to the detriment of the use and enjoyment of the property of another. *Mills v. Kimbley*, 909 N.E.2d 1068, 1075 (Ind.Ct.App.2009), *reh'g denied.*

■■■ A nuisance might be a nuisance *per se* (a nuisance at law), or a nuisance *per accidens* (a nuisance in fact). *Id.* A nuisance *per se* is that which is a nuisance in itself, and which, therefore, cannot be so conducted or maintained as to be lawfully carried on or permitted to exist. *Id.* On the other hand, an otherwise lawful use may become a nuisance *per accidens* by virtue of the circumstances surrounding the use. *Id.* "It is logical, therefore, that the determination that something is a nuisance *per se* is a question of law, and the determination of a nuisance *per accidens,* a question for the [trier of fact]." *Id.* (internal quotation omitted). The latter determination is to be made in light of all the surrounding facts and circumstances, and the dispositive question is whether the thing complained of produces such a condition as in the judgment of reasonable persons is naturally productive of actual physical discomfort to persons of ordinary sensibility, tastes, and habits. *Id.* Summary judgment, which by definition resolves only

those cases lacking material factual disputes, is rarely appropriate in *per accidens* nuisance cases. *Id.* Neither party acknowledges that distinction, but it seems apparent the nuisance alleged in the case before us is *per accidens.*

■■■ The parties appear to acknowledge the nuisance question depends on whether the Landowners presented evidence their riparian rights are impaired by Hall's docks. There is an issue of fact as to whether or to what extent the Landowners have access, and summary judgment on that issue was error. Landowner White averred the Yacht Club docks prevent him from having a usable dock or navigating a boat to and from the shoreline. Dillender stated in a deposition that the docks "hinder," but do not prevent, his access to the river:

> If I've got a pontoon boat I have to back all of the way out past where he has extended the slip back all of the way out to get to the river. You can't turn around in there because he has come in on me and he has shortened the distance between my place and his boats that he parks out there and I've had them, the boats, actually hit my boat trying to get around.

(Appellants' App. at 66.)

Hall does not acknowledge those statements in his Statement of Facts or nuisance argument, but elsewhere in his brief he does note Dillender averred the docks "prevent the Affiant from being able to navigate a boat to and from their [sic] shoreline," (*id.* at 63), but when deposed said the docks "hinder" but do not "prevent" his access. (*Id.* at 66.) He also notes Dyer's deposition testimony that, despite Hall's docks, he is able to get his own two boats in and out, as can his guests with large boats; the docks do not interfere with his swimming in the river; and

he has reasonable ingress and egress to the river.

 We acknowledge a genuine issue of material fact generally cannot be created through a witness's own inconsistent testimony. *Miller v. Martig*, 754 N.E.2d 41, 46 (Ind.Ct.App.2001) (finding no issue of material fact where witness was inconsistent). But despite some inconsistencies, the landowners designated sufficient evidence of the docks' interference with their riparian rights that summary judgment was improper.

### 3. Trespass

 The Landowners' trespass allegation is premised on the placement and maintenance of the deadmen on the Dillender and Dyer properties. To show trespass,

> it is necessary for the plaintiff to prove only that he was in possession of the land and that the defendant entered thereon without right, such proof entitling the plaintiff to nominal damages without proof of injury, and upon additional proof of injury to products of the soil, the plaintiff is entitled to compensatory damages.

*Hawke v. Maus*, 141 Ind.App. 126, 131, 226 N.E.2d 713, 717 (1967).

The Landowners acknowledge the deadmen were installed with permission, but "it is the continued use and maintenance of these deadmen for which the trespass claim is brought." (Br. of Appellants at 16.) Hall asserts, citing only his own affidavit, "These deadman [sic] are not even being used by the Yacht Club.... The

Yacht Club did not construct or maintain these deadmen." (Br. of Appellees at 14.) Hall notes testimony by some Landowners that the deadmen do not bother them or cause interference, and that the deadmen were there when the Landowners purchased their lots, but he does not explain the significance of that testimony to the trespass claim.

Dillender, in his deposition, indicated Hall is using the deadman on his property. He said he and a prior owner of the Yacht Club installed it, and he believed the deadman was a trespass because "[Hall]'s got his cables on it. He has been asked to remove them." (Appellees' App. at 95.)

The Landowners designated sufficient evidence of trespass, in the form of testimony Hall continued to use and maintain the deadmen after being asked to remove them, to survive summary judgment. In *Turner v. Sheriff of Marion County*, 94 F.Supp.2d 966, 984 (S.D.Ind.2000), the Southern District of Indiana noted:

> Under the doctrine of trespass *ab initio*, a person who lawfully enters property under color of law (*e.g.*, a government agent or private individual acting under legal authority) then later abuses that authority by a positive act of misconduct will be considered a trespasser *ab initio* and liable in trespass for his acts from the first moment of his entry.

To the extent the Landowners' trespass claim is premised on use and maintenance of the deadman after Hall was told to stop using it, and not its original installation,[7] there is an issue of fact that precludes summary judgment.[8]

---

7. The landowners' complaint alleges trespass in the form of "retention, *use*, and maintenance" of the deadmen "after Plaintiffs requested they be removed." (Appellants' App. at 28.) The record does not reflect when Hall was asked to remove the cables from the deadmen.

8. At oral argument, Hall represented he did not have cables attached to the deadmen. Should that be true, this section of the opinion would be moot.

## CONCLUSION

As the landowners designated evidence that gives rise to a genuine issue of fact as to whether the docks and deadmen are a nuisance or a trespass, Hall was not entitled to summary judgment. We accordingly reverse.

Reversed.

BRADFORD, J., and BROWN, J., concur.